UNITED STATES of America, Plaintiff–Appellee,

v.

Michael R. THRONEBURG, Defendant–Appellant.

No. 89–2111.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 17, 1990.

Decided Dec. 17, 1990.

**655**

Patricia L. Blake, Jennifer J. Peregord (argued), Office of the U.S. Attorney, Eric M. Straus, Asst. U.S. Atty., U.S. Dept. of Justice, Detroit Strike Force, Detroit, Mich., for plaintiff-appellee.

Kenneth R. Sasse (argued), Detroit, Mich., for defendant-appellant.

Before MERRITT, Chief Judge and RYAN and NORRIS, Circuit Judges.

RYAN, Circuit Judge.

Michael Throneburg challenges his conviction and sentence for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), raising three issues: Whether the district court erred in:

refusing to compel the prosecution to elect between two counts of firearm possession, one charging unlawful possession of a gun and the other charging unlawful possession of ammunition;

refusing to suppress a statement Throneburg made to a federal investigator after he had invoked his fifth amendment right to counsel at his state arraignment; and

relying upon a previous conviction for entering without breaking, Mich.Comp. Laws Ann. § 750.111 (West 1979), to enhance Throneburg's sentence under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e).

We conclude that the district court's rulings on the first two issues did not deprive Throneburg of a fair trial, and that the Michigan statutory crime of entering without breaking does not conform to the Supreme Court's definition of burglary for ACCA purposes as set forth in *Taylor v. United States*, —— U.S. ——, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). Consequently, we shall affirm the conviction, but vacate the sentence and remand for resentencing.

I.

About 2:30 a.m. on March 23, 1989, while Michael Throneburg was driving an automobile in the City of Detroit, he was ordered to pull over by two Detroit police officers who had seen him driving erratically. According to the officers, when Throneburg was asked to produce his driver's license and car registration, he replied that the car belonged to his sister. He then appeared to reach down between the seats. The officers ordered Throneburg out of the car and frisked him for weapons. They found several bullets in his back pocket and, upon a search of the front seat of the vehicle, found a handgun.

At his arraignment in state court on March 27, 1989, Throneburg requested a

court-appointed attorney. Soon after the arraignment and before Throneburg had seen an attorney, the state dismissed its charges against Throneburg in order that he might be prosecuted by federal authorities for being a felon in possession of a firearm.

After taking Throneburg into custody on April 3, 1989, federal officers advised him of his *Miranda*[1] rights. Special Agent Mark Hady of the Bureau of Alcohol, Tobacco, and Firearms interrogated Throneburg, even though Throneburg had not spoken with an attorney. After the interrogation, Throneburg signed a written statement stating that he had been arrested for carrying a concealed weapon in a motor vehicle, and acknowledged that there had been a weapon in the car.[2]

Throneburg was charged with two counts of violating 18 U.S.C. §§ 922(g)(1) and 924. Count I charged him with being a felon in possession of a .357 Magnum revolver, and Count II charged him with being a felon in possession of six rounds of ammunition for that firearm.

Prior to trial, Throneburg filed a motion to suppress his written statement to Special Agent Hady as violative of *Miranda v. Arizona, supra.* After a hearing, the motion was denied.

At the beginning of the trial, Throneburg moved to compel the prosecution to elect between Counts I and II, arguing that the counts were multiplicitous. The court declined to rule on the motion and suggested that Throneburg raise it "at the appropriate time." At the end of the trial, Throneburg again moved to require the government to elect between the counts for the

reason earlier assigned and for the additional reason that the multiplicitous counts invited the jury to return a "compromise verdict." The court denied the motion, ruling that if Throneburg were convicted on both counts, any error could be corrected by sentencing him upon only one count; and, if he were convicted on only one count, his argument would be moot.

The jury acquitted Throneburg on the gun possession charge, and convicted him on the ammunition possession charge.

At the sentencing hearing, the government sought to enhance the sentence, pursuant to 18 U.S.C. § 924(e), which prescribes a minimum fifteen year sentence for persons convicted under section 922(g) who have three prior convictions for "violent felonies" or serious drug offenses. 18 U.S.C. § 924(e). Throneburg had four prior convictions: breaking and entering an occupied dwelling, unarmed robbery, and entering without breaking on two occasions. Throneburg argued that the court could not enhance his sentence under section 924(e) because the Michigan statutory offenses of breaking and entering and entering without breaking were not "violent felonies" within the meaning of section 924(e). The district court rejected this argument, holding that breaking and entering and entering without breaking are burglaries and, therefore, violent felonies under 18 U.S.C. § 924(e)(2)(B)(ii). The court sentenced Throneburg to confinement for fifteen years, pursuant to section 924(e).

## II.

### A. Election of Counts

■ Throneburg contends that allowing the government to prosecute him upon both

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Throneburg's statement, in full, is as follows:
My name is Michael R. Throneburg. I am 34 years of age, married and reside at 1517 Calvary, Detroit, Michigan. In the past I have used the aliases of John Hasper and John Sandlin.
On March 23, 1989, at approximately 2:30 a.m. I was arrested by the Detroit Police for carrying a concealed weapon in a motor vehicle. The vehicle I was driving is a 1988 Ford Festiva which is registered to my wife, Janice Throneburg. The weapon in the car

was a .357 revolver. This weapon belongs to my wife's brother, John McCarthy.
My name is Michael R. Throneburg. Before I made this statement, I was advised of my rights by Special Agent Mark T. Hady. I have also read and signed a Statement of Rights form.
I related to Agents Hady and Thomas the facts in the foregoing statement consisting of 2 pages which I have initialed or signed. I have been given an opportunity to make corrections, and I have initialed each correction made. This statement is true and correct.

the possession of ammunition and possession of a firearm counts unduly prejudiced him by inviting the jury to "compromise" by convicting him on at least one count, whether proved or not.

It is elemental, of course, that the prosecution has broad discretion in bringing criminal cases, *Ball v. United States*, 470 U.S. 856, 859, 105 S.Ct. 1668, 1670, 84 L.Ed.2d 740 (1985), and that the district court has discretion in deciding whether to require the prosecution to elect between multiplicitous counts especially "when the mere making of the charges would prejudice the defendant with the jury." *United States v. Reed*, 639 F.2d 896, 904 n. 6 (2d Cir.1981). We may reverse only for an abuse of discretion. *Id.* We conclude that the district court did not abuse its discretion in this matter.

In arguing for mandatory election of counts, Throneburg relies on this court's decision in *United States v. Rosenbarger*, 536 F.2d 715 (6th Cir.1976), *cert. denied*, 431 U.S. 965, 97 S.Ct. 2920, 53 L.Ed.2d 1060 (1977), and later decisions by other circuits. In *Rosenbarger*, we held that multiple prosecutions under 18 U.S.C. § 1202(a)(1), prohibiting federal felons from receiving and possessing handguns, cannot be grounded on the receipt and possession of multiple handguns on the same occasion. After *Rosenbarger*, several circuits held that the simultaneous possession of firearms and ammunition cannot support multiple charges under section 922(h) which, like section 922(g), prohibits firearm possession by certain persons. *See, e.g., United States v. Evans*, 854 F.2d 56, 60 (5th Cir.1988); *United States v. Pelusio*, 725 F.2d 161, 168 (2d Cir.1983); *United States v. Oliver*, 683 F.2d 224, 232–33 (7th Cir. 1982). These cases, despite holding that the defendants may not be convicted and sentenced on multiple counts resulting from single possessions of multiple items, did not hold that the defendants' trials were prejudiced by the submission of mutually exclusive counts to the factfinder. In each case, the court vacated the multiplicitous convictions but left the first conviction intact. This approach was taken by the Supreme Court in *Ball v. United States*, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985). In *Ball*, which involved the prosecution of a convicted felon for receiving a firearm in violation of section 922(h) and possessing that firearm in violation of section 1202(a), the Court suggested that any error resulting from multiplicitous charges should be resolved at the sentencing phase, not the guilt phase, of the trial. As the Court explained:

> To say that a convicted felon may be prosecuted simultaneously for violation of §§ 922(h) and 1202(a), however, is not to say that he may be convicted and punished for two offenses. Congress can be read as allowing charges under two different statutes with conviction and sentence confined to one.

*Id.* at 859, 105 S.Ct. at 1670. The Court observed that when multiplicitous prosecutions and convictions occur, "the only remedy consistent with the congressional intent is for the district court, where the sentencing responsibility resides, to exercise its discretion to vacate one of the underlying convictions." *Id.* at 864, 105 S.Ct. at 1673. *Ball*, then, was ample authority for the district court to defer to the government's discretion to conduct the prosecution in this case upon multiplicitous counts, recognizing that the court could merge the convictions after the jury verdicts are recorded. In the case at bar, the separate counts for the ammunition and the gun—counts which require other factual proofs—are appropriate separate units of prosecution for purposes of trial, although they would merge for purposes of sentencing. We conclude, therefore, that the district court did not abuse its discretion in this matter.

### B. Suppression of Evidence

Throneburg claims the district court erred in refusing to suppress the statement he made to Special Agent Hady because the interrogation which produced the statement, conducted after Throneburg requested court-appointed counsel at the state arraignment but without benefit of consulation with counsel or waiver of that right, violated his fifth amendment rights. We conclude that while it is possible that Throneburg's fifth amendment rights were

violated, any such violation was harmless error beyond a reasonable doubt.

In *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Court held that police officers may not, except in circumstances not involved here, resume interrogation of a suspect after he has expressed a desire to deal with them only through counsel. In *Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), the Court ruled that *Edwards* applies when police-initiated interrogation follows a suspect's request for counsel in connection with an unrelated criminal investigation. Following *Roberson*, our own circuit, last year, extended *Miranda* protection to a suspect who, after invoking her right to counsel under the fifth or sixth amendments—it is not clear which—at a state arraignment, was interrogated by federal investigators without being given the opportunity to consult with counsel. *United States v. Wolf*, 879 F.2d 1320 (6th Cir.1989). This case differs, however, from the *Edwards, Roberson, Wolf* line of authority in that the state charges, for the defense of which counsel was appointed, were dismissed prior to the federal officer's questioning of Throneburg and, therefore, there was no attorney for Throneburg to consult. Despite this distinction, we shall assume, without deciding, that Throneburg's *Miranda* rights were violated when he was interrogated by Agent Hady.

 Since Throneburg does not claim that his statement was involuntary, any violation of his *fifth amendment right to counsel* is subject to a harmless error analysis. *Wolf*, 879 F.2d at 1323 (citation omitted). In determining whether the erroneous admission of such a statement is harmless, courts must determine "whether, absent the improperly admitted confession, it is clear beyond a reasonable doubt that the jury would have returned a verdict of guilty." *Id.* at 1324 (citation omitted). Applying this standard, we think it is plain that the admission of Throneburg's statement was harmless. Although Throneburg claims his statement to Agent Hady cannot be deemed harmless because it induced him to testify in his own behalf, we think admission of the statement was indeed harm-

less because Throneburg was not convicted for any act admitted in the statement. Quoted in full at n. 2, the statement, in relevant part, provides:

> On March 23, 1989, at approximately 2:30 a.m. I was arrested by the Detroit Police for carrying a concealed weapon in a motor vehicle. The vehicle I was driving is a 1988 Ford Festiva which is registered to my wife, Janice Throneburg. The weapon in the car was a .357 revolver. This weapon belongs to my wife's brother, John McCarthy.

Throneburg was not convicted of possessing a firearm, which he admits in the statement. He was convicted of possessing ammunition of which he makes no mention in the statement. Even without the statement, the jury heard abundant evidence to support conviction on the possessing of ammunition charge. The two arresting officers, whose credibility was not challenged, testified that they found the ammunition in Throneburg's pocket and that Throneburg himself told the officers at the time of his arrest that "the gun was not loaded. See, I had the rounds in my pocket." Even without considering the statement, it is clear beyond a reasonable doubt that the jury would have returned a verdict of guilty, absent the statement.

### C. Sentence Enhancement

 In sentencing the defendant under the Armed Career Criminals Act (ACCA), the lower court found that Throneburg's prior convictions for the Michigan offense of entering without breaking constituted burglary and, thus, fell within the statute's definition of "violent crimes." Since the sentencing, however, the Supreme Court has decided *Taylor v. United States*, —— U.S. ——, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), which clarifies the definition of burglary as used in section 924(e)(2)(B)(ii) of ACCA.

Throneburg was sentenced pursuant to 18 U.S.C. § 924(e)(1) which states:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title, for a *violent felony* or a serious drug offense, or both, committed on occasions

different from one another, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years....

(Emphasis added.) This statute defines "violent felony" as

(B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—

....

(ii) is *burglary*, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B) (emphasis added).

A split in the circuits as to the definition of "burglary" as used in this statute caused the Supreme Court to examine the term in *Taylor*. The Court concluded:

[A] person has been convicted of burglary for purposes of a § 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of *unlawful or unprivileged* entry into, or remaining in, a building or structure, with intent to commit a crime.

*Taylor*, 110 S.Ct. at 2158 (emphasis added).

Michigan's entering without breaking statute provides: "Any person who, without breaking, shall enter any [buildings specified in statute] ... with intent to commit a felony or any larceny therein, shall be guilty of a felony punishable by imprisonment in that state prison ..." Mich.Comp. Laws § 750.111 (1979). The model jury instructions for this section list its elements as entry of a specified building without breaking and entering with the intent to commit a felony or larceny. Mich.Crim. Jury Inst. 25:3:01. Nowhere, either in the statute or in the model jury instruction, is there any indication that entering without breaking requires an "unprivileged" entry and no Michigan case has inferred such a requirement. Michigan's legislature did, however, create another crime, entering without owner's permission, whose elements specify that entry is not permissive. *See* Mich.Comp.Laws § 750.115 (1979); Mich.Crim.Jury Inst. 25:4:01. The existence of the entering without owner's permission offense suggests that the legislature was aware of the absence of this element in the offense of entering without breaking and purposely created a separate crime requiring it.

Because the Michigan offense of entering without breaking does not require an unprivileged entry, it does not qualify as a burglary under the Court's definition in *Taylor*. Throneburg could not, therefore, be sentenced under section 924 because he has not been convicted of three violent felonies as defined in that section.

### III.

For the foregoing reasons, the defendant's conviction for being a felon in possession of a firearm, under 18 U.S.C. § 922(g), is AFFIRMED. The sentence imposed under the Armed Career Criminals Act, 18 U.S.C. § 924, is VACATED and we REMAND for resentencing.