**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Michael HEBEKA, Defendant–Appellant.**

No. 93–3066.

United States Court of Appeals,
Sixth Circuit.

Argued March 3, 1994.

Decided May 16, 1994.

Catherine H. Killam, Office of the U.S. Atty., Western Div., Toledo, OH, Richard A. Friedman (argued and briefed), Dept. of Justice, Crim. Div., Appellate Section, Washington, DC, for plaintiff-appellee.

Norman G. Zemmelman (argued and briefed), Britz & Zemmelman, Toledo, OH, for defendant-appellant.

Before: MERRITT, Chief Judge; and MILBURN and SILER, Circuit Judges.

MERRITT, Chief Judge.

This direct criminal appeal raises a significant double jeopardy question under the Food Stamp Act as well as three other trial issues. Hebeka, a grocer, appeals his two convictions for violating the Food Stamp Act in violation of 7 U.S.C. § 2024(c).[1] He was also convicted in Count 3 of the indictment of defrauding the United States by violating 18 U.S.C § 287.[2] Count 1 charges the defendant with violating § 2024(c) by presenting $7.2 million in food coupons under a false food stamp license. Count 2 charges a violation of § 2024(c) for presenting $3.45 million in food stamps in a transaction made illegal because Hebeka purchased them for cash

instead of exchanging them for food. The $3.45 million in stamps described in Count 2 are part of the total $7.2 million in stamps charged in Count 1. The jury convicted on all counts, and the district court sentenced Hebeka to concurrent five-year sentences as to Counts 1 and 2, to run consecutively with a five-year sentence on Count 3. The defendant claims that the two food stamp convictions are the "same offense" for double jeopardy purposes[3] and should be merged and treated as only one conviction.[4] The principal issue before us is whether under § 2024(c) of the Food Stamp Act, the presentation of food stamps to the government based on two separate misrepresentations gives rise to two felonies or one felony. The defendant also asserts that a prior conviction for food stamp fraud and a prior consistent statement by a government witness were erroneously admitted against him and that the court below erred in reserving the defendant's motion for acquittal at the end of the government's case. We agree that Counts 1 and 2 should merge under the Double Jeopardy Clause but do not agree that the three claimed trial errors require reversal.

## I.

Prior to 1984, Michael Hebeka owned a market in Toledo, Ohio, which was properly licensed to accept government food stamps. In 1984, Hebeka was convicted for the first time of food stamp fraud and banned for life from participating in the program. The main factual dispute at trial was whether the defendant was still the real owner of the market when additional fraud occurred from 1985 to 1991.

Hebeka maintained that he sold the store to Dennis Alfred in 1985 and that any later

---

1. The Food Stamp Act, 7 U.S.C. § 2024(c), provides in pertinent part:
   Whoever presents ... coupons for payment ... knowing the same to have been ... used in any manner in violation of the provisions of this chapter or the regulations issued pursuant to this chapter, shall be guilty of a felony....

2. The general fraud statute, 18 U.S.C. § 287, provides in pertinent part:
   Whoever ... presents to any person ... in the civil ... service of the United States, or to any department ... thereof, any claim ... knowing

such claim to be false ... shall be imprisoned not more than five years....

3. The Double Jeopardy Clause of the Fifth Amendment provides: "nor shall any person be subject for the same offense to be twice put in jeopardy ..."

4. No double jeopardy issue is raised as to Count 3, and we do not rule on the validity of the sentence on this count.

fraud could not be attributed to him. The government produced evidence that the sale of the market was phony and that Hebeka caused Alfred to submit a false application in order to procure another license to receive food stamps. Alfred, the purported buyer of the store, testified as a government witness that the sale was never consummated and that the defendant was the owner at all times. During the relevant period, the Ashland Market redeemed $7.2 million in stamps while selling only $3.9 million worth of food, including non-food stamp purchases.

Counts 1 and 2 overlap in respect to the amount of food stamps presented illegally—the first count charges $7.2 million which includes the $3.45 million charged in the second count. Both counts charge a species of fraud or deceit. The first charges that food stamps were presented fraudulently on the basis of an illegal license and the second charges that part of these same food stamps were also presented fraudulently for another reason—because they were illegally exchanged for cash, not food.

Our method of analysis of double jeopardy claims of this type is set out in *Pandelli v. United States*, 635 F.2d 533 (6th Cir.1980). The first step is to determine whether Congress intended to punish two violations of the same statute separately.[5] On § 2024(c), the Senate Report simply says:

> This section makes it a violation of Federal law to knowingly use, transfer, acquire, or possess coupons in any manner not authorized by this act or to present, or cause to be presented, such coupons for redemption knowing them to have been received, transferred, or used in any manner in violation of the provisions of the act.

S. Rep. 1124, 1964 U.S.C.C.A.N. 3275, 3291. This statement does not support the government argument. Here the government argues that the defendant presented to a government agency illegally obtained food stamps and that they were illegally obtained for two reasons. It concludes that since there were two deceitful acts—obtaining a false license and effectuating the transfer for cash instead of food—there should be two felonies.

■ Making two false statements in the same transaction in order to obtain the same money does not give rise to two felonies. *See United States v. Mangieri*, 694 F.2d 1270, 1281–82 (D.C.Cir.1982) ("We agree with other federal courts that 'the making of a number of false statements to a lending institution in a single document constitutes only one criminal violation.'") (citations omitted). *Mangieri* noted further that to "require the government to file a separate count for each misrepresentation ... [would produce] a danger of inappropriate multiple punishments for a single criminal episode." *Id.* at 1282. Here there is no legislative statement suggesting that we turn a single pattern of fraud into two felonies because the defendant was deceitful in two different respects. We are governed by the principle that "[w]hen legislative intent is ambiguous, the rule of lenity prescribes that doubt will be resolved against turning a single transaction into multiple offenses, and therefore in favor of combining multiple factual predicates into the same count. *See Bell v. United States*, 349 U.S. 81, 83–84, 75 S.Ct. 620, 622–23, 99 L.Ed. 905 (1955)." *United States v. Duncan*, 850 F.2d 1104, 1108 n. 4 (6th Cir.1988). We therefore hold that Counts 1 and 2 should merge.

5. *Pandelli* noted that:

[t]he *Blockburger* [*v. United States*] test [284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)], as modified in *Whalen* [v. United States, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980)] and *[Illinois v.] Vitale*, [447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980)] comes into play only after other techniques of statutory construction have proved to be inconclusive. The first step is for the court to inquire "whether Congress intended to punish each statutory violation separately." *Jeffers v. United States*, 432 U.S. 137, 155, 97 S.Ct. 2207, 2218, 53 L.Ed.2d 168 (1977). To determine the congressional intent it is necessary to examine the statutory language and the legislative history, as well as to utilize other techniques of statutory construction. *See Whalen* [445 U.S. at 690–91], 100 S.Ct. at 1437. The Court reaches the *Blockburger* test only when those prior techniques of construction have failed to resolve the question of whether the legislature intends to allow cumulative punishments for violations of two statutes. *Pandelli*, 635 F.2d at 536.

■ In this case we invoke the remedy utilized in *United States v. Throneburg*, 921 F.2d 654, 656–57 (6th Cir.1990), which held that a conviction on a multiplicitous count should simply be vacated unless the defendant has been prejudiced. *Id.* at 657 (citing *Ball v. United States*, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985)). Indeed, this was apparently the original intention of the district court. In a published opinion, the court below noted that "[a]lthough the indictment charged two food stamp fraud counts, the Court viewed them as separate units of prosecution which merged for purposes of sentencing." *United States v. Hebeka*, 796 F.Supp. 268, 273 n. 2 (N.D. Ohio 1992). Notwithstanding its stated intentions, the district court did not merge the charges but instead entered separate convictions on both counts. Under *Throneburg*, entering both convictions was erroneous. Because the defendant has not demonstrated any prejudice that would require a new trial, *Throneburg* dictates that one of the convictions be vacated. 921 F.2d at 657. Accordingly, we remand to the district court with directions to vacate either Count 1 or Count 2 and to resentence the defendant. The district court may also want to consider whether a consecutive sentence as to Count 3 is authorized under double jeopardy analysis.

## II.

The defendant also raises three claimed errors at trial. The first of these is that the district court improperly admitted his prior conviction for food stamp fraud under Fed. R.Evid. 404(b). Rule 404(b) permits the admission of prior convictions to prove motive, intent, plan or knowledge. In Count 1, the government had to prove that the store's food stamp authorization was fraudulently obtained due to the "sham sale" of the Ashland market. The government argues that defendant's knowledge that he could not participate in the program because of his prior conviction was relevant to his motivation, intent, and plan in setting up the paper transfer to Alfred and in proving that the transaction was intended to perpetrate a fraud on the United States. The defendant counters that the only relevant issue necessary to prove Count 1 is his disqualification

from the food stamp program, to which he was willing to stipulate. He asserts that his prior conviction, the cause of the disqualification, is irrelevant to the case and should have been excluded under Fed.R.Evid. 402. Hebeka also contends that even if the evidence was admissible under 404(b), the district court should have excluded it under Rule 403. He asserts that the prior conviction's prejudice outweighs its probative value, especially given the fact that he was willing to stipulate that he was disqualified from participating in the program.

■ The government is not required to accept the defendant's stipulation, and the defendant has no right to selectively stipulate to particular elements of the offense. *United States v. Zalman*, 870 F.2d 1047, 1056 (6th Cir.), *cert. denied*, 492 U.S. 921, 109 S.Ct. 3248, 106 L.Ed.2d 594 (1989). The prosecution is permitted to prove the underlying circumstances which explain the motive, intent or plan to defraud. As noted in *United States v. Vincent*, 681 F.2d 462, 465 (6th Cir.1982), "[t]he jury is entitled to know the 'setting' of a case. It cannot be expected to make its decision in a void—without knowledge of the time, place and circumstances of the acts which form the basis of the charge." *Id.* at 465 (citations omitted). Here, Hebeka's prior conviction provides, at a minimum, the "motive" for setting up the sham sale of his business, and thus was admissible under Rule 404(b).

\* \* \*

Dennis Alfred testified on behalf of the government that the defendant was the owner of the Ashland Market. On cross-examination, the defendant's attorney attacked Alfred's credibility, implying that Alfred had fabricated his testimony to protect himself from prosecution. The government sought to rehabilitate Alfred by introducing a prior statement he made to an insurance agent, George Van Doren, that Hebeka still owned the market. Instead of introducing this statement through Alfred, however, the government called Van Doren to testify to what Alfred had told him.

The defendant contends that the district court erred by admitting Van Doren's "hear-

say" statement. Van Doren testified that Alfred told him that Michael Hebeka owned the Ashland Market. The district court permitted the statement under Fed.R.Evid. 801(d)(1)(B)(prior consistent statement of a witness to rebut a charge of recent fabrication). The rule provides in pertinent part:

(d) Statements which are not hearsay. A statement is not hearsay if—

(1) Prior statement by witness. The declarant testifies at the trial or hearing and *is subject to cross-examination concerning the statement,* and the statement is....(B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.

Fed.R.Evid. 801(d)(1)(B) (emphasis added).

The question of whether a prior consistent statement may be admitted through a third party has been addressed in most circuits. Hebeka cites *United States v. West,* 670 F.2d 675, 686–87 (7th Cir.), *cert. denied,* 457 U.S. 1124, 102 S.Ct. 2944, 73 L.Ed.2d 1340 (1982), which holds that such statements may be admitted through the declarant only. Every other circuit which has addressed this issue permits third parties to testify about another witness's prior consistent statement. *United States v. Montague,* 958 F.2d 1094, 1099 (D.C.Cir.1992) (listing six other circuits in accord); *United States v. Myers,* 972 F.2d 1566, 1576 n. 7 (11th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1813, 123 L.Ed.2d 445 (1993); *United States v. Piva,* 870 F.2d 753, 758 (1st Cir.1989). As noted by the D.C. Circuit in *Montague,* "[t]he Seventh Circuit appears to be a minority of one to the contrary." 958 F.2d at 1099.

█ The literal requirements of Rule 801 can be met even when a third party testifies as to someone else's prior statement. Here the declarant, Alfred, was in court and subject to cross examination. The defendant suggested that he was lying. He could easily have been recalled after the third party's testimony. The ordinary dangers of hearsay are not present in this case. Both witnesses were subject to cross examination concerning their memory of past events and their motives to falsify. Where, as here, the requirements of the rule are satisfied, the admission of a prior consistent statement through a third party on an important matter in dispute at trial should be permitted.

\* \* \*

The final issue presented is whether the district court erred by reserving a ruling on the defendant's Rule 29 motion for judgment of acquittal, and whether the error was harmless. We have held that it is erroneous for a district court to reserve ruling on a Rule 29 motion made at the end of the government's case in chief. *United States v. Reifsteck,* 841 F.2d 701, 703 (6th Cir.1988). The government admits that reserving ruling may have been erroneous, but asserts that there was no prejudice to the defendant.

█ Erroneously reserving ruling on a Rule 29 motion is harmless if "at the close of the government's case in chief the evidence viewed in the light most favorable to the government was sufficient to permit submission of the case to the jury." *Id.* Here the evidence presented in the government's case showed that Hebeka was disqualified from the program by his prior conviction, that he caused Alfred to submit a false application and that he made a sham conveyance of the store to Alfred. The evidence further showed that Hebeka acted as the owner and manager of the store, that he directed his employees to purchase coupons for cash and that he redeemed coupons with forms which were illegally signed in blank by his employees. We find this evidence more than sufficient to submit the case to the jury. The error was harmless.

For the reasons stated above, we **REVERSE** and direct the district court to vacate the conviction on either Count 1 or Count 2, and to resentence the defendant consistent with this opinion. The district court's judgment is **AFFIRMED** in all other respects.