47 F.3d 1171
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alfredo GONZALES, Defendant-Appellant.
 No. 94-1116.
 United States Court of Appeals, Sixth Circuit.
 Feb. 7, 1995.
 
 Before: LIVELY, JONES, and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 This appeal concerns the validity of the search of a Holiday Inn room originally rented to the defendant, Alfredo Gonzales, and the seizure of his personal property from the room. The district court denied the defendant's motion to suppress, finding that at the time of the search, the defendant no longer had a reasonable expectation of privacy in the motel room. For the reasons given below, we affirm.
 
 
 2
 The events giving rise to this appeal began on May 13, 1993, when a semi-truck loaded with 1600 pounds of marijuana left Texas for Coldwater, Michigan, disguised as a shipment of watermelon and grapefruit. The next day, May 14, the truck was intercepted by the DEA in Oklahoma. The driver agreed to cooperate with the authorities and was eventually allowed to continue toward his destination.
 
 
 3
 The information given the driver by the individual who hired him indicated that the marijuana was to be delivered to someone named "Fred." When he reached Michigan late on May 16, the driver called "Fred," using a telephone number he had been given in Texas. The driver and "Fred" made arrangements to unload the truck the next morning. "Fred" turned out to be the defendant, Alfredo Gonzales.
 
 
 4
 On the morning of May 17, the defendant and several other men unloaded the truck in a barn. When the off-loading was done, Gonzales called his wife, who arrived with money to pay the driver; he took almost $3,000 and left in his truck. Gonzales and his cohorts spent the rest of the day stacking and weighing the marijuana in preparation for distribution, under the watchful eye of a DEA surveillance team that was videotaping their activities from a position across the road from the barn. The surveillance tapes show the defendant and others going to and from the barn, as vehicles were driven in the barn, loaded, and driven out. After the cars loaded with marijuana left the barn, they were stopped by the police and the drivers were arrested, including the defendant and his wife. The barn was subsequently searched and the remaining marijuana seized. Without the container taken into DEA custody in Oklahoma, the total weight of the marijuana was 1400 pounds.
 
 
 5
 Before arriving at the barn that day, Gonzales had checked into the Holiday Inn in Angola, Indiana, directly across the Michigan state line and about 12 miles from the barn where the marijuana was later seized. Paying with a credit card, the defendant reserved Room 115 for two nights, May 17 and 18.
 
 
 6
 On May 19, the scheduled departure date, the maid reported to the hotel manager, a Mr. Hasselman, that Room 115 had apparently not been occupied the night before. She also reported that there was a wallet in the room with money "hanging out of it." In order to protect the belongings left in the room, the manager double-locked the door. Sometime later on the 19th, two unidentified women arrived at the hotel and told the manager that Gonzales had been called away unexpectedly and that they had been sent to retrieve his belongings. Because the women were not registered to the room, the manager denied the request.
 
 
 7
 Later that same day, the manager saw a newscast which reported that Gonzales had been arrested on drug charges. The manager called the local police and was ultimately put in contact with the Indiana state police and a Michigan office of the DEA. Later testimony indicated that the motivation underlying the manager's call to the authorities was two-fold. The court asked Hasselman, "Did you call the police because these items were in the room and the room had been, in your opinion, abandoned, or did you call the police because you thought that Mr. Gonzales was involved in some criminal activity?" Hasselman replied, "For both reasons." According to Hasselman, the hotel's policy was to call the police on the rare occasion when an occupant wholly abandoned a roomful of belongings. However, if an occupant inadvertently left behind a single item or two, as commonly occurs, a hotel employee simply removed the item and notice was sent to the occupant at their home address.
 
 
 8
 In response to Hasselman's call, Stuben County Detective Marty McNeal and another officer arrived at the Holiday Inn at about 2:00 p.m. on the 20th. According to McNeal, although he knew that Gonzales had been arrested, his purpose was not to collect evidence but simply to "pick up the articles that [were] left behind." When the manager and the officers entered Room 115, they found, among other things, a small strongbox. Detective McNeal opened the box with a key taken from a wallet in an open purse on a desk. The box contained $17,000 in cash. The officers then removed all the personal items in Room 115 and took them to the Steuben County Sheriff's Department evidence room, where the items were inventoried and stored. A day or two later, the DEA took custody of the cash.
 
 
 9
 Although the motel manager was aware on May 19 that Gonzales had been arrested, he nonetheless charged the defendant's credit card for the nights of May 19 and 20. According to Hasselman, a charge was made because the room was unavailable for rental to a third party on May 19 and because it was not cleared out by police until 2:00 p.m. on May 20, which was two hours past regular check-out time. Hasselman admitted, however, that Room 115 was actually rented to a third party on the night of May 20.
 
 
 10
 Defense counsel argued in support of suppression that the defendant's expectation of privacy in Room 115 continued past the two-day reservation he made for the nights of May 17 and 18, because the hotel manager had charged him for the additional nights of May 19 and 20. Hence, the defendant contended, Room 115 could not be considered "abandoned" on May 20 and the warrantless search of the room on that date constituted a violation of the Fourth Amendment's prohibition against unreasonable searches and seizures.
 
 
 11
 The district court ruled, correctly we conclude, that the manager's action, which was undertaken without the defendant's knowledge, could not give rise to a reasonable, subjective expectation of privacy by the defendant. The district court determined that this conclusion was bolstered by the fact that the defendant had sent someone to take possession of his personal property as early as May 19. This conduct obviously indicated an effort on his part to vacate the room on that date, as his two-day reservation required.
 
 
 12
 It is well-established that an individual loses a reasonable expectation of privacy in a hotel room when that individual's occupancy ends. For example, in United States v. Ramirez, 810 F.2d 1338, 1341 and n. 3 (5th Cir.1987) (listing cases in which "[f]ederal courts of appeals have uniformly approved warrantless searches of hotel or motel rooms after occupancy has terminated"), the Fifth Circuit held that the defendants had no reasonable expectation of privacy in a hotel room after the expiration of the rental period, notwithstanding the fact that they had been arrested in the interim and, thus, were prevented from removing their belongings from their room. See also United States v. Huffhines, 967 F.2d 314, 318 (9th Cir.1992). The Ramirez court said, "Appellants do not argue, nor does it make any difference to the outcome of their position, that their arrest constituted an involuntary relinquishment of control over the hotel room that would maintain any previously held expectations of privacy." Ramirez, 810 F.2d at 1341 n. 3. (citations omitted). See also United States v. Reyes, 908 F.2d 281, 285 (8th Cir.1990). We conclude that any reasonable expectation of privacy that the defendant had in this case had been extinguished by the time the search was conducted on the afternoon of May 20.
 
 
 13
 The more troubling aspect of the search conducted in Room 115 concerns the warrantless opening of the locked box in which the police found $17,000 in cast, the only arguably incriminating evidence in the room. The government contends, first, that because the defendant no longer had a reasonable expectation of privacy in the room or its contents, this issue is moot. Moreover, even if the search of the locked box was questionable at its inception, it appears that the police acted within their authority when they took custody of all the personal items in the room and transferred them to headquarters for inventory and safekeeping. Certainly, it would have been reasonable at that point to inspect and list the box and its contents as part of the police department's inventory procedure, and the $17,000 in cash would inevitably have been discovered and offered as evidence in the prosecution of the defendant. Hence, if the officer's action in opening the locked box while still in the motel room was constitutionally suspect, it was no more than premature and fails to provide an adequate ground for suppression. Cf. United States v. Johnson, 22 F.3d 674, 684 (6th Cir.1994) ("If the circumstances are such that the evidence would have been found in any inventory search that inevitably followed seizure, ... the evidence could be introduced under Nix [v. Williams, 467 U.S. 431, 444 (1984) ]").
 
 
 14
 In any event, there can be little question that the introduction of this evidence at trial, if it was error, was harmless. Although defense counsel characterizes the money found in the locked box in Room 115 as "the primary and most damaging evidence against the Appellant," we have no doubt that it played a thoroughly minor role--and, more likely, no role at all--in the defendant's conviction. The connection between the money and the 1400 pounds of marijuana received by the defendant on May 17 is unclear. What is clear--from the testimony of the truck driver who delivered the marijuana to the defendant, from the testimony of law enforcement officers who witnessed the delivery, from the surveillance tapes that record in detail the defendant's activities at the delivery site, and from testimony concerning the events surrounding his arrest--is that the evidence of guilt was overwhelming in this case, even without testimony concerning the seizure of money from Room 115 of the Holiday Inn. It follows that the introduction of this evidence, if error, was harmless beyond a reasonable doubt. See United States v. Throneburg, 921 F.2d 654, 648 (6th Cir.1990).
 
 
 15
 We are, therefore, satisfied that the district judge did not err in denying the defendant's motion to suppress, and we AFFIRM the judgment entered by the district court.