**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 08a0139n.06**
**Filed: March 7, 2008**

**No. 07-1230**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| JAMES EDWARD THOMSON, JR., | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |

Before:     BOGGS, Chief Judge; and BATCHELDER and GRIFFIN, Circuit Judges

PER CURIAM.  James Edward Thomson, Jr., appeals the sentence imposed for his conviction of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), and being in possession of the same firearm, knowing it was stolen, in violation of 18 U.S.C. § 922(j). Thomson argues that the district court erred when it counted two of his prior convictions for burglary as "violent felonies," thus increasing his sentence under the Armed Career Criminal Act of 1984 ("ACCA"), 18 U.S.C. § 924(e).  He argues that the ACCA's definition should not cover burglaries of non-dwellings.  The Supreme Court explicitly declined to adopt such a narrow definition, and Thomson presents no compelling argument as to why this court should do what the Supreme Court would not.  Though we recognize that the imposition of the mandatory minimum is a harsh sentence

considering only the facts of Thomson's crimes of conviction, it is nevertheless the minimum imposed by Congress, which we are duty-bound to follow. We therefore affirm Thomson's sentence.

I

On March 3, 2006, an ATF agent was interviewing Andrew Vallier about a crime unrelated to this case. In the course of the interview, Vallier said that in November or December of 2005 he had stolen a .22-caliber revolver from the home of Nelson Rupp. He also told the ATF that he had given this revolver to Thomson to satisfy a debt. The ATF subsequently obtained and executed a search warrant for Thomson's residence on April 13, 2006, where they found a revolver. Thomson admitted that he had acquired the weapon as payment of the debt. There was no allegation that Thomson cooperated with Vallier in stealing the revolver or that Thomson used or intended to use the weapon in any crime. Furthermore, at the sentencing hearing, Thomson stated that while he had initially accepted the revolver, he did not want to keep the weapon, and had asked Vallier to take it back. Vallier allegedly agreed, but before he could do so, Vallier committed the crime that led to his arrest and interrogation by the ATF, which in turn led to the ATF's investigation of Thomson.

On May 26, 2006, Thomson pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C § 922(g)(1), and to being in possession of the same firearm, knowing it was stolen, in violation of 18 U.S.C. § 922(j).

The Pre-sentence Investigation Report (PSIR) listed multiple prior convictions, including the following four convictions for Burglary:

1. April 22, 1997: Two counts of Burglary/Party to a Crime in violation of Wis. Stat. §§ 943.10(1) and 939.05.

2. June 20, 1997: Two counts of Burglary/Building or Dwelling in violation of Wis. Stat. § 943.10(1)(a).

3. April 1, 2000: Two counts of Breaking and Entering in violation of Mich. Comp. Law § 750.111.

4. April 1, 2000: One count of Breaking and Entering in violation of Mich. Comp. Law § 750.111.

The PSIR also recommended that Thomson be classified as an armed career criminal under the ACCA, which would result in a fifteen-year minimum sentence. Thomson objected to this classification, arguing that the two 1997 Wisconsin convictions did not count as "violent felonies" as defined in 18 U.S.C. § 924(e)(2)(B). Because his argument relies on the facts of the 1997 Wisconsin convictions, we briefly review them.

**A. 1997 Wisconsin Convictions**

On April 8, 1997, Thomson, who was sixteen, and three accomplices broke into the Ravina Inn, a three-story building located in Lake Delton, Wisconsin and stole $1,600 to $2,000 in cash, a five-disc CD player, several bottles of alcohol, and a pair of binoculars, totaling approximately $4,000 in lost property and damage.

Three days later, on April 11, 1997, Thomson, his younger brother, and a third accomplice, broke into the One Stop Convenience Store in the same town and stole $275 in cash and coins, approximately 100 lottery tickets, a box of lighters, and beer.

The police followed the tracks from the second crime scene to Thomson's residence and found evidence there linking Thomson to both of the above burglaries and six more. Thomson

admitted his involvement in the crimes. On July 29, 1997, Thomson pled no-contest to the two crimes listed above and the remaining counts were dismissed.

## B. The sentencing hearing

On November 1, 2006, Thomson appeared for sentencing before District Judge Quist. Judge Quist informed Thomson that he would likely be sentenced as an armed career criminal. Thomson's counsel requested the opportunity to brief the issue of whether Thomson's 1997 Wisconsin Burglary convictions qualified as "violent felonies" under 18 U.S.C. § 924(e)(2)(B)(ii). Judge Quist granted this request and both parties filed memoranda on the issue.

According to the government, Thomson conceded that his prior burglaries qualified as violent felonies under 18 U.S.C. § 924(e) at the sentencing hearing on February 12, 2007. A close reading of the transcripts demonstrates, however, that Thomson only conceded that there was an unpublished Sixth Circuit case, *United States v. Ortkiese*, 208 F. App'x 436 (6th Cir. 2006), that "goes against [the] argument that [Thomson's prior] burglaries may be considered nonviolent felonies for the purpose of enhancement under the Armed Career Criminal Act." The record does not show a full concession.

After acknowledging *Ortkiese*, Thomson then adopted an alternative argument, attempting to convince the court that the four counts of burglary in Wisconsin, which arose from two different charging documents, should be consolidated and counted as only a single conviction for the purposes of the ACCA. The judge was not convinced, and Thomson does not pursue this argument on appeal.

At the conclusion of the hearing, the district court ruled that Thomson had been convicted of three violent felonies and thus faced a 15-year mandatory sentence. Though it was clear that the

judge had examined Thomson's other convictions listed in the PSIR, he specifically mentioned only the two April 1997 Wisconsin convictions and one of the counts of the 1997 Michigan burglary conviction as qualifying as violent felonies under the ACCA. Thomson's Offense Level was calculated to be 30 and Criminal History Category to be IV. The resulting Sentencing Guidelines range was 135-168 months. Nevertheless, the judge noted that the mandatory 15-year minimum sentence under the ACCA still applied. Both Judge Quist and the prosecuting attorney agreed that the mandatory minimum was a "very harsh sentence" considering the facts of Thomson's case. But Judge Quist concluded that there was no way that the court, "in good conscience and consistent with its duty," could not impose the mandatory minimum. Accordingly, the judge sentenced Thomson to 15 years of imprisonment. Judge Quist then asked Thomson's counsel to file an appeal given that the "fact of finding these prior convictions is still rattling around as an issue."

Subsequently, Thomson timely filed a notice of appeal, objecting to the classification of the two 1997 Wisconsin convictions as violent felonies.

II

We review the district court's interpretation of the ACCA *de novo*. *United States v. Brady*, 988 F.2d 664, 666 (6th Cir. 1993).

Thomson argues that the sentencing judge erroneously considered the two Wisconsin burglaries as "violent felonies" under the ACCA. The government argues that even if the judge did err, Thomson's other convictions would have still qualified him for the mandatory sentence enhancement. However, because the judge did not make findings on the other convictions, we will address Thomson's contentions directly.

No. 07-1230
United States v. Thomson

## A. The ACCA

The relevant portion of the ACCA, 18 U.S.C. § 924(e)(1), provides:

In the case of a person who violates [18 U.S.C. § 922(g)] and has three previous convictions by any court referred to in [18 U.S.C. § 922(g)(1)] for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under [18 U.S.C. § 922(g)].

18 U.S.C. § 924(e)(2)(B) provides:

[T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that--

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

Notably, the term "burglary" is left undefined in the ACCA. The ambiguity created by the absence of a definition was resolved by the Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990). The Court concluded that:

[A] person has been convicted of burglary for purposes of a § 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime.

*Taylor*, 495 U.S. at 599. In *Shepard v. United States*, 544 U.S. 13 (2005), the Court addressed "whether a sentencing court can look to police reports or complaint applications to determine

whether an earlier guilty plea necessarily admitted, and supported a conviction for, generic burglary."

*Id.* at 16. The Court concluded:

> We hold that it may not, and that a later court determining the character of an admitted burglary is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented.

*Ibid.*

*Taylor* and *Shepard* clearly bind sentencing courts to use a "categorical approach" to determine whether an offense qualifies as a violent felony. *United States v. McGrattan*, 504 F.3d 608, 611 (6th Cir. 2007). That is, courts must "look only to the fact of conviction and the statutory definition of the prior offense." *Taylor*, 495 U.S. at 602. Courts may depart from this approach only in the "narrow range of cases" where (1) the statutory definition at issue is broader than the "generic" definition of burglary; and (2) the jury has been required to find all the elements of generic burglary or (3) in the case of a guilty plea, the charging document, written plea agreement, transcript of plea colloquy, or any explicit factual finding by the trial judge to which the defendant assented demonstrate that the defendant admitted the elements of a generic burglary. *Taylor*, 495 U.S. at 602; *Shepard*, 544 U.S. at 26.

## B. The Wisconsin Burglary Statute

Wis. Stat. § 943.10 (1997), which defines burglary, provides:

(1) Whoever intentionally enters any of the following places without the consent of the person in lawful possession and with intent to steal or commit a felony in such place is guilty of a Class C felony:

     (a) Any building or dwelling; or

     (b) An enclosed railroad car; or

     (c) An enclosed portion of any ship or vessel; or

     (d) A locked enclosed cargo portion of a truck or trailer; or

     (e) A motor home or other motorized type of home or a trailer home, whether or not any person is living in any such home; or

(f) A room within any of the above.

Thomson was charged with two counts under § 943.10(1). Because that statute is broader than generic burglary as defined in *Taylor*, under *Shepard*, the sentencing court was required to look to the charging documents, written plea agreement, transcript of plea colloquy, or any explicit factual finding by the trial judge to which the defendant assented. *Shepard*, 544 U.S. at 16. Thomson pled no contest to counts four and five in case number 1997CF000120. These counts represent the April 8, 1997, and April 11, 1997, burglaries described above. Count four charged Thomson with "intentionally enter[ing] the One Stop Convenience Store, without consent, and with intent to steal." Count five charged Thomson with "intentionally enter[ing] the Ravina Bay Bar and Grill, without consent, and with the intent to steal." *Ibid.* Thus, the charging documents clearly detailed the elements of *Taylor*'s generic definition of burglary.

Thomson acknowledges that "at first glance the Appellant's prior Wisconsin convictions appear to be violent felonies because they were 'burglary' convictions." Appellant's Br. 5. Nevertheless, Thomson argues that the ACCA should distinguish burglaries of unoccupied buildings from burglaries using violence or burglaries of dwellings and that only the latter two kinds of

burglaries should be considered violent felonies. In *Taylor*, however, the Supreme Court declined to adopt such a narrow definition. After reviewing the legislative history, the Court noted, "[t]here never was any proposal to limit the predicate offense to some special subclass of burglaries that might be especially dangerous, such as those where the offender is armed, or the building is occupied, or the crime occurs at night." *Taylor*, 495 U.S. at 588. The court also reasoned that a narrower definition of burglary, would not be "supported by the language of the statute or the legislative history" and that the "choice of language indicates that Congress thought ordinary burglaries, as well as burglaries involving some element making them especially dangerous, presented a sufficiently 'serious potential risk' to count toward enhancement." *Taylor*, 495 U.S. at 589.

Despite the Supreme Court's clear refusal to narrow the generic definition of burglary and its specific choice to include burglaries of any building or structure, Thomson argues that the definition should be narrowed to include only burglaries of dwellings. He presents three arguments, all equally futile. First, he argues that because Wisconsin distinguishes between burglaries of occupied and unoccupied buildings, federal law should do the same. Second, he notes that the Federal Sentencing Guidelines contain a definition of violent felony different from that found in the ACCA. Third, Thomson presents three cases in support of his interpretation.

All of Thomson's arguments are inapposite. Additionally, as Thomson is aware, our circuit briefly considered and dismissed a similar argument in *Ortkiese*. Ultimately, Thomson presents no reason why this court should do what the Supreme Court and a panel of our own circuit refused to do.

1.  The Wisconsin distinction between Class C and Class B felonies

As noted above Wis. Stat. § 943.10 (1997), defines burglary and creates a distinction between Class C and Class B felony burglaries.  Thomson argues that the "Wisconsin statutes make a distinction between different types of burglaries–burglary of an unoccupied building is treated much less severely than burglaries using violence or burglaries of dwellings."  Appellee's Br. 5.  This argument is not only irrelevant, it is also based on a false premise.  Wisconsin simply does not distinguish between burglaries of unoccupied buildings and burglaries of dwellings. Section 943.10(1)(a) clearly places buildings, occupied or not, and dwellings on equal footing.

Yet, even if it did make such a distinction, that distinction would be irrelevant under *Taylor*. The point of *Taylor* was to make federal law independent of underlying state law so that differences in state law treatment of the same criminal conduct would not carry over into federal law, which is meant to apply uniformly across the country.  For this reason, the Court adopted a generic definition of burglary.  *Taylor,* 495 U.S. at 592 ("'[B]urglary' in § 924(e) must have some uniform definition independent of the labels employed by the various States' criminal codes.").

2.  The Federal Sentencing Guidelines

Thomson also argues that the Federal Sentencing Guidelines use a definition different from that found in §924(e).  This is true,[1] but irrelevant.  Definitions of similar sounding, but distinct

---

[1] The Application Note 1 to U.S.S.G. § 4B1.4 even highlights the difference:

This guideline applies in the case of a defendant subject to an enhanced sentence under 18 U.S.C. § 924(e).  Under 18 U.S.C. § 924(e)(1), a defendant is subject to an enhanced sentence if the instant offense of conviction is a violation of 18 U.S.C. § 922(g) and the defendant has at least three prior convictions for a "violent felony" or

terms need not be consistent across pieces of federal legislation. As we have noted before, the terms "crime of violence" and "violent felony" have distinctly different meanings and are not interchangeable. *Hornaday v. Lamanna*, 2000 U.S. App. LEXIS 10785, No. 99-4196, at *6 (6th Cir. May 9, 2000) (citing *United States v. Wilson*, 168 F.3d 916, 928 (6th Cir. 1999) and *United States v. Oliver*, 20 F.3d 415, 417 (11th 1994)).

3. Case law

Thomson cites three cases to support his contention that the term "burglary" under § 924(e) should be limited to burglary of a dwelling: *United States v. Arnold*, 58 F.3d 1117 (6th Cir. 1995); *United States v. Crowell*, 997 F.2d 146 (6th 1993); and *United States v. Throneburg*, 921 F.2d 654 (6th Cir. 1990). None of these cases are on point.

At issue in *Arnold* was whether a prior Tennessee conviction for assault with intent to commit sexual battery constituted a "crime of violence" under the "otherwise" clause of U.S.S.G. § 4B1.2(a)(2) ("or otherwise involves conduct that presents a serious potential risk of physical injury

---

"serious drug offense," or both, committed on occasions different from one another. The terms "violent felony" and "serious drug offense" are defined in 18 U.S.C. § 924(e)(2). It is to be noted that the definitions of "violent felony" and "serious drug offense" in 18 U.S.C. § 924(e)(2) are not identical to the definitions of "crime of violence" and "controlled substance offense" used in § 4B1.1 (Career Offender), nor are the time periods for the counting of prior sentences under § 4A1.2 (Definitions and Instructions for Computing Criminal History) applicable to the determination of whether a defendant is subject to an enhanced sentence under 18 U.S.C. § 924(e).

to another"), which sets the standard for determining whether a non-enumerated offense is a "crime

of violence." Our circuit held that:

> [i]f the statute does not clearly establish that the offense involves the 'use, attempted
> use, or threatened use of physical force,' the court may then look at the charge in the
> indictment to which the defendant pled guilty or was adjudged guilty to determine
> if the offense involved a serious potential risk of physical injury to others. In the case
> of a guilty plea, the district court may also consider the plea agreement relating to the
> prior offense.

*Arnold*, 58 F.3d at 1124.

This holding, however, was limited to interpreting the "otherwise" clause of U.S.S.G. §

4B1.2(a)(2) and has no bearing on how courts count an offense that is one of the enumerated crimes

in § 924(e). Indeed, to conclude otherwise would vastly narrow the definition of burglary adopted

in *Taylor*, which requires only "unlawful or unprivileged entry into, or remaining in, a building or

structure, with intent to commit a crime" *Taylor*, 495 U.S. at 599.

*Crowell* also involved the interpretation of "crime of violence" under U.S.S.G. § 4B1.2(a).

The question was whether a Colorado conviction for aggravated motor vehicle theft constituted a

"crime of violence." The aggravated motor vehicle theft count charged Crowell with taking a taxi

"without authorization and by threat and deception." *Crowell*, 997 F.2d at 149. The district court,

however, relied on additional information contained in the indictment sheet, relating to charges

arising from the same set of circumstances, but which were ultimately dropped. Our circuit held that

though an indictment may be used as evidence of the facts essential to sustain a guilty plea, it cannot

be used "as evidence that all conduct charged in the indictment occurred." *Ibid.* Again, *Crowell* is

irrelevant because it deals only with the interpretation of "crime of violence" under the Guidelines and dictates nothing as to how courts should interpret the crimes enumerated in § 924(e).

*Throneburg* involved Michigan's entering without breaking statute, which provided, "any person who, without breaking, shall enter any [buildings specified in statute] with intent to commit a felony or any larceny therein, shall be guilty of a felony punishable by imprisonment in that state prison . . . ." Mich. Comp. Laws § 750.111 (1979). Our circuit held that "[b]ecause the Michigan offense of entering without breaking does not require an unprivileged entry, it does not qualify as a burglary under the Court's definition in *Taylor*." *Throneburg*, 921 F.2d at 659.

*Throneburg* is inapposite because the Michigan statute at issue was broader than the generic statute and there was no further usable information. As discussed above, while the Wisconsin statute is also broader than the generic definition of burglary, the charging documents for the crimes at issue demonstrate that Thomson pled to all of the elements of a generic burglary.

III

Thomson's arguments are all without merit. In *Taylor*, the Supreme Court specifically declined to adopt a narrower definition of burglary, and Thomson presents no reason why this court should do what the Supreme Court would not. As the district court noted, the 15-year sentence may be harsh given the facts of Thomson's case, but we are without the discretion to depart from a mandatory sentence imposed by Congress. We accordingly AFFIRM Thomson's judgment and sentence.