NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0482n.06

No. 13-5856

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

LAZELLE MAXWELL,                                    )
                                                    )
      Petitioner-Appellant,                         )
                                                    )
v.                                                  )
                                                    )
UNITED STATES OF AMERICA,                           )
                                                    )
      Respondent-Appellee.                          )
                                                    )

FILED
Jul 01, 2015
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF KENTUCKY

BEFORE:     DAUGHTREY, GIBBONS, GRIFFIN, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge.  In this § 2255 ineffective-assistance challenge to one of the petitioner's two federal drug conspiracy convictions, the government concedes both prongs of the test under *Strickland v. Washington*, 466 U.S. 668 (1984): trial counsel was constitutionally deficient in failing to challenge Lazelle Maxwell's multiplicitous conspiracy convictions and Maxwell suffered prejudice as a result.  Both sides also agree that one of the convictions should be vacated and the $100 special assessment also vacated.

This leaves one key question, which is the subject of this appeal: What is the appropriate relief?  Maxwell requests a new trial.  In the alternative, he argues that the sentence for the remaining conspiracy conviction should remain unchanged.  The government, while opposing the request for a new trial, contends that the district court should conduct a new sentencing on the remaining count.

In light of the government's concession of the Sixth Amendment violation under *Strickland*, we reverse the district court's denial of relief and remand with instructions to vacate Maxwell's conviction for the one of the two conspiracy counts. For the following reasons, we also order a new sentencing hearing on remand.

I.

Beginning around January 2008, Maxwell conspired with three others to sell crack cocaine and heroin in northern Kentucky. Maxwell recruited Darryl Ross to sell both drugs. Ross and Maxwell traveled to Detroit once or twice a week to buy the drugs. Preston Bell became a salesperson in March 2008 and, in May, so did Bell's cousin, Marc Peeples. According to Ross's estimate, the conspirators distributed a total of around fifteen ounces of crack cocaine and between fifteen and twenty ounces of heroin between January and May.

In late May, an informant conducted a controlled purchase of heroin from Bell. Police officers obtained warrants and searched the three houses that the conspirators were using for their operations. Maxwell was eventually arrested in April 2009.

A federal grand jury indicted Maxwell for two violations of 21 U.S.C. §§ 841(a)(1) and 846: (1) conspiracy to distribute fifty grams or more of a substance containing cocaine base; and (2) conspiracy to distribute a substance containing heroin. The case proceeded to trial in September 2009 and Maxwell was convicted of both counts. The district court sentenced him to 240 months' imprisonment on Count One and 120 months' imprisonment on Count Two, to be served consecutively. He also received ten years of supervised release on Count One and eight years on Count Two, to be served concurrently for a total term of ten years of supervised release. Finally, the court required Maxwell to pay a $100 special assessment for each conviction. This court affirmed Maxwell's convictions and sentences on direct appeal. *United States v. Shields*,

415 F. App'x 692 (6th Cir. 2011). The Supreme Court denied certiorari. *Maxwell v. United States*, 131 S. Ct. 3048 (2011) (mem.).

Maxwell then filed a *pro se* motion to vacate his sentence under 28 U.S.C. § 2255(a). The motion included an argument that his trial counsel was ineffective for failing to object to the indictment as multiplicitous. Accepting the recommendation of the magistrate judge, the district court denied the motion. But the district court issued a certificate of appealability on the question of "whether Maxwell's trial counsel erred under *Strickland v. Washington* . . . by failing to challenge the charges against Maxwell in Counts One and Two of the Superseding Indictment as multiplicitous." Maxwell filed a timely notice of appeal.

## II.

"'On appeal from the denial of a § 2255 motion, we review legal conclusions *de novo* and factual findings for clear error.'" *Howard v. United States*, 743 F.3d 459, 463 (6th Cir. 2014) (quoting *Regalado v. United States*, 334 F.3d 520, 523–24 (6th Cir. 2003)).

## III.

To prevail on a Sixth Amendment challenge based on ineffective assistance of counsel, a convicted defendant must satisfy two elements. First, he "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. Second, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694.

The district court held that trial counsel's failure to challenge the allegedly multiplicitous convictions did not fall below an objective standard of reasonableness. As a result, the court did not consider whether the failure to challenge prejudiced Maxwell at trial.

On appeal, however, the government concedes that Maxwell satisfies both *Strickland* prongs. The government first concedes that counsel's performance was deficient. A defendant who joins a single agreement may be convicted of only one conspiracy count even if "the object of [the] single agreement is to commit . . . many crimes," even if those crimes are different and even if they are prohibited by different statutes. *Braverman v. United States*, 317 U.S. 49, 53 (1942). Charging multiple counts for the same criminal conduct is known as "multiplicity," *United States v. Swofford*, 512 F.3d 833, 844 (6th Cir. 2008), and multiplicitous convictions violate the Fifth Amendment's Double Jeopardy Clause, *United States v. Tocco*, 306 F.3d 279, 289 n.12 (6th Cir. 2002). This court has therefore reversed one of a defendant's two convictions when the two charges were based on the same underlying conspiracy. *United States v. Adcock*, 487 F.2d 637, 639 (6th Cir. 1973) (per curiam).

In its brief, the government "concedes that only a single conspiracy existed in this case." The district court correctly noted that "[t]he two counts allege identical dates, participants, and locations" and that the counts "only differ with respect to the drug involved in the conspiracy." Thus, the government concludes that "[i]n light of *Braverman*, Maxwell's convictions were multiplicitous."

The government also concedes that trial counsel's failure to challenge the charges as multiplicitous rendered counsel's performance objectively unreasonable. The district court relied on *United States v. Dunn*, 269 F. App'x 567 (6th Cir. 2008)—which held that the district court did not commit plain error in permitting separate convictions for a conspiracy to commit

two distinct drug offenses—in concluding that trial counsel was not deficient. The government concedes, nonetheless, that the performance was unreasonable because *Dunn*, an unpublished opinion, appears to run counter to *Braverman* and this court's decisions applying *Braverman*.

Next, the government does not contest that Maxwell has suffered the prejudice necessary to satisfy *Strickland*'s second prong. The government made the same concession before the district court. We may therefore proceed to the next question in the case: the nature of the remand.

We accept the government's concession of both *Strickland* prongs as disposing of the merits of the ineffectiveness claim because, as we recently held in the § 2254 context, "the merits of [the] . . . claim are neither jurisdictional nor unwaivable, and the [government] may therefore abandon them as it sees fit." *Allen v. Parker*, 542 F. App'x 435, 436 (6th Cir. 2013).

## IV.

Maxwell argues that we should remand for a new trial but the government disagrees. If we do not order a new trial, both parties agree that we should remand to the district court with instructions to (1) vacate Maxwell's conviction on one of the two conspiracy counts; and (2) refund the $100 special assessment that Maxwell incurred as a result of the second conviction. Maxwell believes that the district court should stop there. The government, by contrast, argues that vacating one count necessitates resentencing on the remaining count.

## A.

We first consider Maxwell's claim for a new trial. A defendant convicted on multiplicitous counts is entitled to a new trial only if the inclusion of the several counts prejudiced him at trial. *United States v. Throneburg*, 921 F.2d 654, 657 (6th Cir. 1990). In other words, we will order a new trial only if the trial court abused its discretion by failing to require

the government to elect between multiplicitous counts on the basis that "'the mere making of the charges would prejudice the defendant with the jury,'" *id.* (quoting *United States v. Reed*, 639 F.2d 896, 904 n.6 (2d Cir. 1981); *see also United States v. Hebeka*, 25 F.3d 287, 291 (6th Cir. 1994) (explaining that *Throneburg* held "that a conviction on a multiplicitous count should simply be vacated unless the defendant has been prejudiced"); *United States v. Emly*, 747 F.3d 974, 980 (8th Cir. 2014) ("A multiplicitous indictment requires remand for a new trial only if the multiplicity prejudices the defendant.").

Maxwell presents two arguments in favor of a new trial. He first argues that the government is estopped from making any argument against a new trial because it argued before the district court that "[a]ny successful challenge raising multiplicity would have been addressed and remedied by a superseding indictment." Stated differently, he contends that the government sought to use to its advantage the claim that, had Maxwell's trial counsel raised the multiplicity issue, Maxwell would have been tried on a one-count, non-multiplicitous indictment. Thus, his argument goes, "under doctrines of waiver and estoppel, the government cannot abandon this concession by claiming that it had, all along, the right to try Maxwell on a multiplicitous indictment."

Maxwell's argument is unconvincing. "The doctrine of judicial estoppel prevents a party who successfully assumed one position in a prior legal proceeding from assuming a contrary position in a later proceeding." *Mirando v. U.S. Dep't of the Treasury*, 766 F.3d 540, 545 (6th Cir. 2014) (citing *New Hampshire v. Maine*, 749 U.S. 742, 749 (2001)). For one thing, the government was not successful in the particular argument that Maxwell references. At that time, the government was arguing that the district court should not issue a certificate of appealability because Maxwell had not made a substantial showing that his trial counsel was deficient in

failing to object to the multiplicitous indictment. That argument was unsuccessful: the district judge granted the certificate of appealability. Moreover, only the harshest reading of the government's argument before the district court would tie the government to the position that it had no right to try Maxwell on a multiplicitous indictment. Although the government's argument is worded imprecisely, a fairer reading is as follows: if Maxwell's trial counsel had successfully challenged the *indictment*—persuading the trial judge to exercise his discretion to force the government to elect between charges prior to trial—the government would have proceeded to trial on a superseding indictment. And, in the government's view, Maxwell would have received the same sentence anyway. The government was not asserting that the trial judge, upon realizing the indictment was multiplicitous, would have automatically required the government to choose between the charges and obtain a superseding indictment. The government by no means argued that it did not have the right to try Maxwell on both conspiracy charges. His estoppel theory therefore fails.

Maxwell next contends that he is entitled to a new trial on the merits because he suffered prejudice at trial as a result of the multiplicitous indictment. He argues:

> [T]he jury repeatedly heard that the Government was charging Maxwell with multiple felony counts—and the trial court underscored this fact by separately instructing the jury on each count. . . . In a case where the perpetrator's identity was at issue, the repeated references to multiple crimes risked prejudicing the jury against Maxwell by leading them to view his defense with a more jaundiced eye.

This argument is not persuasive. While Maxwell correctly notes that we have alluded to the need for a new trial where the defendant suffered prejudice at trial, the court did not hold in those cases that the circumstances actually warranted a new trial. *Hebeka*, 25 F.3d at 291 (holding that

the defendant failed to show prejudice and refusing to order a new trial); *Throneburg*, 921 F.2d at 657 (reaching the same conclusion and collecting cases).

Maxwell does not point to any case from this or any other circuit ordering a new trial based on prejudice from trial on multiplicitous charges. Maxwell cites only two cases, both from district courts, that reach his desired result. First, he points to *United States v. Clarridge*, 811 F. Supp. 697, 702 (D.D.C. 1992). But *Clarridge* was a case in which the trial judge exercised his discretion to require the government to choose between multiplicitous counts before trial. That was within the district court's authority. *Throneburg*, 921 F.2d at 657. And one trial judge's exercise of discretion does not mean that another trial judge abuses her discretion by taking an alternative course. *See id.* Maxwell next cites *United States v. Polizzi*, 257 F.R.D. 33, 36 (E.D.N.Y. Apr. 30, 2009), in which the district court decided after trial that the defendant had suffered prejudice and ordered a retrial. *Id.* at 38. But there, the Second Circuit reversed the order of retrial and ordered the reinstatement of the remaining convictions. *United States v. Polouizzi*, 393 F. App'x 784, 785 (2d Cir. 2010) (per curiam).

The usual course on appeal is not to remand for a new trial but to leave the remaining conviction intact after vacating the multiplicitous convictions. This is what the Supreme Court did in *Ball v. United States*, 470 U.S. 856, 865 (1985), and the course that other circuits have routinely followed. *See, e.g.*, *United States v. Benoit*, 713 F.3d 1, 18 (10th Cir. 2013); *United States v. Robertson*, 606 F.3d 943, 953 (8th Cir. 2010); *United States v. Tann*, 577 F.3d 533, 543 (3d Cir. 2009); *United States v. Zalapa*, 509 F.3d 1060, 1065 (9th Cir. 2007); *United States v. Parker*, 508 F.3d 434, 441–42 (7th Cir. 2007).

Taken together, these decisions suggest that a convicted defendant seeking to show prejudice must show more than the mere knowledge on the part of the jury that the defendant

faced multiple charges. Indeed, if the jurors' knowledge of multiple charges sufficed, the exception would swallow the rule: every multiplicitous indictment would result in trial prejudice.

There is no sign that Maxwell suffered any prejudice at trial beyond the alleged risk—which could be alleged in every case of this nature—of jurors' negative reaction to the mere inclusion of multiple charges. The evidence presented at trial was not duplicative. *See United States v. Lilly*, 983 F.2d 300, 305 (1st Cir. 1992) ("When a defendant is tried on multiplicitous charges, yet the same evidence would have been admissible against him had he been tried on a single, properly laid count, he cannot ordinarily complain of a spillover effect."). As it related to Maxwell, the government's witnesses discussed his role in the conspiracy, which encompassed both heroin and crack cocaine. The same witnesses testified to both. At no point during closing did the government imply that the multiple charges should sway the jury on Maxwell's guilt. Moreover, the district court explicitly instructed the jury that "[t]he number of charges is no evidence of guilt, and this should not influence your decision in any way." The court emphasized the need "to separately consider the evidence that relates to each charge, and to return a separate verdict for each one," without allowing its decision on one charge to influence its decision on the other. *See Emly*, 747 F.3d at 974 (stating the Eighth Circuit's position that jury "instructions that direct the jury to consider each charge separately ensure that the jury's verdict on the valid counts will not be influenced by the multiplicitous counts").

Maxwell vaguely suggests that the multiplicitous charges harmed him because his identity was at issue: the government claimed that he went by the nickname "Stone" and the defense cast some doubt on that theory. But there is no reason to think that the jury was more inclined to find that Maxwell was a conspirator because of the number of charges against him. The additional charge did not expand the scope of admissible evidence of his identity. The

government presented significant evidence of Maxwell's involvement in the conspiracy, which the jury was free to accept or reject. Nothing in the government's closing arguments suggest that the number of charges had any impact on that decision. And again, the jury was specifically instructed not to consider the number of charges as evidence of Maxwell's guilt.

In light of all the circumstances, Maxwell's arguments about the impact of the multiplicitous charges are unconvincing. We hold that he is not entitled to a new trial.

B.

We next consider whether the district court may resentence Maxwell on remand. Maxwell argues that it should leave his sentence on Count One undisturbed after vacating Count Two. The government, on the other hand, urges us to remand for resentencing on Count One. The government claims that the district court "thought a sentence of 360 months," which would be at the bottom of the guideline range even after Count Two is vacated, was "necessary" after applying the sentencing factors in 18 U.S.C. § 3553(a). In the government's view, "the court's decision to impose a 240-month sentence on Count 1 and a 120-month sentence on Count 2 was unquestionably part of an interdependent 'sentencing package' that the court should be allowed to reconsider on remand."

After vacating a conviction, our discretion to dictate the nature of the remand extends to deciding whether the defendant will be resentenced on the remaining counts. *See* 28 U.S.C. § 2106; *United States v. Foster*, 765 F.3d 610, 613 (6th Cir. 2014). The court may therefore "vacate and remand an entire sentencing package despite the fact that it includes an unchallenged sentence." *United States v. Clements*, 86 F.3d 599, 600–01 (6th Cir. 1996). A sentencing package exists "where sentences imposed on the multiple counts are interdependent." *Pasquarille v. United States*, 130 F.3d 1220, 1222 (6th Cir. 1997).

Maxwell again leads with a waiver argument. The government argued in the district court: "case law indicates that imposition of the second special assessment and a consecutive sentence for the second conspiracy count constitutes actual prejudice to the Defendant." Maxwell contends that this directly contradicts the government's argument on appeal that the district court would see a 360-month sentence as "necessary," even with only one conspiracy count remaining. Broken down, Maxwell's argument would seem to proceed as follows. To prevail on an ineffective-assistance claim, a convicted defendant must show prejudice—that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. So when the government conceded that the consecutive sentence totaling 360 months satisfied the prejudice prong, it conceded that there is a reasonable probability that Maxwell would have received a lesser sentence if trial counsel had objected to the multiplicitous convictions and the district court had sentenced Maxwell on only one conviction. Waiver principles bind the government to its concession. *United States v. Noble*, 762 F.3d 509, 527 (6th Cir. 2014) (stating, in a different subject area, that the government can waive or forfeit an argument just "like any other litigant"). On appeal, then, the government cannot contend that counsel's error made *no* difference. In Maxwell's view, this is exactly what the government is arguing when it says that the district court clearly saw 360 months as the necessary sentence. And because this is the backbone of the government's claim that the two consecutive sentences were interrelated, the waiver forecloses that argument.

Maxwell's waiver argument has some intuitive appeal. There is indeed some inherent tension in the government's argument on prejudice in the district court and its argument in this court on the interrelatedness of the sentences. But for several reasons, we do not believe that the

waiver doctrine should be applied in this manner. First, although the prejudice doctrine and the government's interrelated-sentences argument share a theme, they are distinct arguments and even a prudent lawyer may not have seen her positions on the issues as inconsistent. It is unlikely that the government, when conceding prejudice in the district court, would have thought that it was waiving an argument for resentencing Maxwell. *See United States v. Osborne*, 402 F.2d 626, 630 (6th Cir. 2005) (defining waiver as "'the *intentional* relinquishment or abandonment of a *known* right'" (quoting *United States v. Olano*, 507 U.S. 725, 733 (1933) (emphasis added)). Second, the government's concession was a relatively narrow one. It concedes only that the additional consecutive sentence *and* the additional special assessment, taken in the conjunctive, give rise to prejudice. Indeed, it would have been difficult for the government to deny—in light of precedent—that a second conviction accompanied by a second special assessment constituted prejudice, even in the absence of a consecutive sentence.

> The Supreme Court "stated that not only did the imposition of a $50 special assessment on each conviction amount to a second punishment, but also concluded a second conviction holds the potential for "adverse collateral consequences" aside from the concurrent sentence, such as delay of eligibility for parole, a harsher sentence under a recidivist statute for any future offense, credibility impeachment, and societal stigma.

*United States v. DeCarlo*, 434 F.3d 447, 457 (6th Cir. 2006) (quoting *Rutledge v. United States*, 517 U.S. 292, 301 (1996)).

The government could arguably have worded its argument more carefully so as to note the possibility that Maxwell did not suffer prejudice from his sentences alone, but this still would not have impacted the overall impact of the prejudice argument. For these reasons, it would take a strained reading of the government's position to hold that it waived its argument that

Maxwell's sentences were interrelated. We decline to adopt such a reading and we therefore proceed to the merits.

Case law has not specifically defined "interdependent" but has provided some examples. In both *Pasquarille* and *Clements*, a defendant's conviction for using and carrying a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c), was vacated for reasons unrelated to the present case, leaving one other conviction intact. *Pasquarille*, 130 F.3d at 1221; *Clements*, 86 F.3d at 600. In each case, we held that the sentences were interdependent because § 924 initially prevented the district court "from enhancing the defendant's sentence." *Pasquarille*, 130 F.3d at 1222; *see also Clements*, 86 F.3d at 601. Each defendant, if sentenced without the § 924 count, would have received a mandatory firearm enhancement under the Sentencing Guidelines. *See Pasquarille*, 86 F.3d at 601 (citing U.S.S.G. § 2D1.1(b)(1)); *Clements*, 86 F.3d at 601.

In Maxwell's view, *Pasquarille* forecloses resentencing here. He quotes the *Pasquarille* court as follows:

> It is clear that the 924(c) offense and the underlying offense are interdependent, and must be considered as components of a single comprehensive sentencing plan. *Therefore*, § 2255 gives the court jurisdiction and authority to reevaluate the entire aggregate sentence.

130 F.3d at 1222 (emphasis added) (citation omitted). Maxwell argues that this passage shows that the court has no jurisdiction in the present case to revisit his sentence. But this argument rests on flawed logic. The passage states that the court can order resentencing because the sentences are interrelated but it does not suggest that the § 924 scenario is the only possible form of interrelatedness or otherwise limit the meaning of interrelated sentences.

Maxwell refers to one other scenario in which this court has permitted resentencing after one of two sentences was vacated. We did so in *United States v. Mainville*, 9 F. App'x 431, 436 (6th Cir. 2001) (per curiam), where the "sentences on the two counts were interdependent, in that the maximum sentence under each count affected whether the sentence would be served concurrently or consecutively" under the Guidelines. Again, however, there is no indication that the *Mainville* court was cabining the scope of the interrelated sentences principle; it was simply holding that the sentences were interrelated in the case at hand.

This court has ordered resentencing in at least one other case outside of the *Pasquarille* and *Mainville* situations. In *United States v. Ehle*, 640 F.3d 689 (6th Cir. 2011), the court held that the defendant's multiple convictions for knowingly possessing and knowingly receiving the same child pornography violated the Double Jeopardy Clause. *Id.* at 698–99. We permitted resentencing on remand after one of the two counts had been vacated. *Id.* at 699. As here, the court had imposed two consecutive sentences totaling a guidelines-range sentence of 360 months. The court did not devote any substantive discussion to the issue of whether the sentences were interrelated, so there is not a clear holding to bind us in determining whether the sentences were interrelated. Nonetheless, *Ehle* shows that we may remand for resentencing outside of the narrow situation that arose in *Pasquarille* and *Clements*.

*Ehle* also casts doubt on Maxwell's argument that the district court would have imposed concurrent sentences if it had treated the counts as interrelated. The government requested concurrent sentences on the two counts but the district court instead imposed consecutive sentences of 240 months on Count One and 120 months on Count Two. Maxwell contends that the "whole idea of a concurrent sentence" is that "the sentence will remain the same even if a lesser concurrent sentence is later invalidated." *See Foster*, 765 F.3d at 613 (vacating but not

remanding for resentencing because nothing could support increasing the sentences on the remaining concurrent counts). Thus, Maxwell argues, if the district court had viewed the 360-month sentence as necessary for the conduct at issue, the judge would have imposed concurrent sentences of 360 months each. But in *Ehle*, we remanded for resentencing even though the district court had imposed consecutive sentences.

In the present case, the sentences are interrelated. At sentencing, the district court discussed the two counts as though they were one. It calculated the overall guideline range for both crimes, noting that it was 360 months to life. The government demonstrates, and Maxwell does not dispute, that the guideline range would have remained the same even if the district court would have vacated one count and sentenced him only on the remaining count. The district court did not discuss the convictions as though they were separate courses of conduct or even separate crimes; rather, the judge discussed the convictions in terms of Maxwell's role in the single conspiracy. Notably, the judge repeatedly referenced one singular conviction rather than the plural. The language throughout the hearing suggests that the court was considering Maxwell's sentences as an interrelated whole rather than as discrete figures.

Having considered Maxwell's course of conduct—along with his history and characteristics—and applying the factors in 18 U.S.C. § 3553(a)—the district court concluded: "In light of the seriousness of this particular offense [and] in light of the defendant's criminal history . . . a sentence within the guideline range would be . . . appropriate and, in this case, necessary." The court also believed that a guideline-range sentence would also serve the goals of deterrence and public protection. It reached this conclusion without emphasizing the fact that Maxwell had been convicted of multiple offenses on this occasion and without double counting any sentencing factor. Even if Maxwell had been sentenced for just one conspiracy count, 360

months would have been at the bottom of the guideline range. This lends further support to the view that the sentences were interrelated.

In light of this—and given that 360 months would have been at the bottom of the guideline range even if Maxwell had been sentenced for just one conspiracy count—it would be anomalous for Maxwell to end up with a sentence significantly below the guideline range and to avoid resentencing.

It is also noteworthy that the district court did not refer in the sentencing hearing to the individual, consecutive sentences for each individual offense. It referred only to the 360-month total term of imprisonment. The notion of individual, consecutive sentences did not appear until the judgment. While it is impossible to ascertain the court's reason for imposing consecutive sentences, its reasoning in the sentencing hearing certainly seems to support the view that the sentences were interrelated. Overall, the record suggests that the two sentences were interrelated and therefore part of a sentencing package.

Maxwell makes two final arguments, both of which lack merit. He first claims that resentencing would involve a Double Jeopardy violation because it would allow his sentence to be enhanced after he has developed an "expectation of finality in the original sentence." *See United States v. DiFrancesco*, 449 U.S. 117, 139 (1980). But Maxwell acknowledges that his argument rests on the premise that his two sentences are not interrelated. Given our holding that they are in fact interrelated, he "no longer had an expectation of finality . . . when he challenged one count of his two interrelated convictions and placed the validity of his entire sentence at issue." *Pasquarille*, 130 F.3d at 1222. Next, Maxwell observes that the court "endeavors to provide the narrowest appellate remedy sufficient to correct a particular error." *See United States v. Mowery*, 210 F.3d 373 (6th Cir. 2000) (unpublished table disposition). True

as that may be, it simply raises the question of what the narrowest sufficient remedy is in this specific case. The case law and the circumstances of this specific case suggest that remanding for resentencing is the most appropriate remedy.

V.

For the above reasons, we reverse the district court's denial of Maxwell's § 2255 motion and remand to the district court with instructions to vacate his conviction on one of the two counts, vacate the special assessment for the vacated count, and resentence him on the remaining count.