NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0373n.06

Case No. 21-4045

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
|     Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| ERIC V. BARTOLI, | ) | DISTRICT OF OHIO |
|     Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |

Before: COLE, READLER, and DAVIS, Circuit Judges.

COLE, Circuit Judge. On appeal from an amended judgment following post-conviction proceedings, Eric Bartoli argues that (1) the sentence imposed at his resentencing is unlawful and (2) he received ineffective assistance of counsel throughout his proceedings. We vacate and remand Bartoli's sentence, as it was imposed in violation of the Ex Post Facto Clause for the second time. But as we find neither a certificate of appealability nor reassignment to be appropriate, we withhold review of Bartoli's other habeas claims and cabin relief to his illegal sentencing claim.

I. BACKGROUND

On October 15, 2003, a federal grand jury indicted Eric Bartoli for conspiracy, securities fraud, the sale of unregistered securities, wire fraud, mail fraud, money laundering, and three counts of attempted income tax evasion. The charges stem from Bartoli's fraud schemes over a period of four years, spanning from 1995 to 1999. Bartoli left the country prior to being charged,

but was ultimately arrested by the Peruvian National Police in Peru in 2013 and was extradited to the United States in 2015.

After the conclusion of Bartoli's fraud-related conduct, but before his legal proceedings began, Congress passed the Sarbanes-Oxley Act. Prior to the Sarbanes-Oxley Act, the relevant statutory maximum sentence for securities fraud was ten years and the statutory maximum for wire and mail fraud was five years. 18 U.S.C. §§ 1341, 1343 (1994), *both amended by* Pub. L. 107–204, Title IX, § 903(b), 116 Stat. 805 (2002). Effective with the Act's passage on July 30, 2002, the statutory maximum for all three of these fraud counts increased to twenty years. Sarbanes-Oxley Act of 2002, Pub. L. No. 107–204, 116 Stat. 745. As our ex post facto jurisprudence requires courts to apply the penalties at the time of the relevant conduct, not at the time of punishment, all documents should have referred to the pre-Sarbanes-Oxley statutory maximums. *See United States v. Davis*, 397 F.3d 340, 347 (6th Cir. 2005) ("The ex post facto clause is implicated where a law . . . 'changes the legal consequences of acts completed before its effective date.'" (quoting *Weaver v. Graham*, 450 U.S. 24, 31 (1981)).

After Bartoli's indictment, the government filed a criminal designation form including the possible maximum penalties for each of the ten counts. The parties later realized this form misstated the potential punishment for his securities fraud charge, listing the statutory maximum as twenty years as opposed to ten.

After initially pleading not guilty, Bartoli pleaded guilty to all of the charges against him other than the money laundering counts, which the government agreed to dismiss. Like the criminal designation form, the plea agreement also misstated the potential statutory penalties Bartoli faced, this time including two additional mistakes: incorrectly listing the statutory maximums for securities, wire, and mail fraud as twenty years each. The presentence investigation

report ("PSR") repeated this same error. At no point yet had the probation office, court, government, or defense counsel flagged the errors.

Based on the parties' sentencing memoranda, the plea agreement, and the PSR, the district court sentenced Bartoli to a total of 240 months' imprisonment: concurrent terms of 60 months on the conspiracy, sale of unregistered securities, and tax evasion charges plus 240 months on the securities, wire, and mail fraud charges—the post-Sarbanes-Oxley maximums. His sentence reflected a substantial upward variance from the Guidelines range of 87 to 108 months.

Bartoli appealed, claiming various sentencing errors, which this court rejected. *United States v. Bartoli*, 728 F. App'x 424 (6th Cir. 2018). But appellate counsel did not raise the use of three incorrect statutory maximums. Bartoli then petitioned for rehearing en banc and moved to stay resolution of that petition to reopen the appeal and raise a claim regarding this error for the first time. At that point, the government conceded and agreed not to contest Bartoli's accurate assertion that the pre-Sarbanes-Oxley Act statutory maximums for securities, wire, and mail fraud were in effect when Bartoli committed his offenses. The government asked the court to direct Bartoli to raise this issue through a 28 U.S.C. § 2255 motion to the district court, and this court subsequently denied Bartoli's outstanding motion and petition.

Bartoli then filed his § 2255 motion to vacate, set aside, or correct his sentence in the district court. He argued that his trial and appellate counsel had been constitutionally ineffective in, among other things, allowing the court to apply the wrong statutory maximums for the securities, wire, and mail fraud charges; that he faced a speedy trial violation and prosecutorial misconduct; and that the treaty used to extradite him from Peru was improper. The government again conceded that Bartoli should be resentenced under the appropriate, lower statutory maximums in effect from 1995 to 1999. The district court agreed and ordered resentencing.

With the help of appointed counsel, Bartoli filed a supplement to his pro se § 2255 motion. Reframing and adding to his prior arguments, Bartoli raised four cognizable issues: (1) that his sentence violated the Ex Post Facto Clause due to the use of higher, inaccurate statutory maximum sentences on three counts; (2) ineffective assistance of counsel ("IAC") during the trial and appellate stages of the proceedings related to those statutory maximum sentences and his plea agreement; (3) a speedy trial violation; and (4) breach of the plea agreement. The government continued to concede the Ex Post Facto Clause issue but opposed relief on the other issues. Bartoli also filed a pro se motion to withdraw his guilty plea, arguing that his plea agreement should be set aside due to his illegal sentence and that his counsel was ineffective in failing to discover the issues raised in his § 2255 motion and in misinforming him of the consequences of his plea.

In its ruling on Bartoli's supplemental § 2255 petition, the district court reiterated its agreement with the parties that use of the Sarbanes-Oxley Act's heightened maximum sentences violated the Ex Post Facto Clause and that such use disadvantaged him at sentencing. Accordingly, the court granted Bartoli's request for vacatur of his sentence and resentencing but denied his other claims and his motion to withdraw his plea. In so doing, the district court rejected Bartoli's assertion that "every single layer of this case [i]s poisoned" by the sentencing error and stated that there was no basis upon which to issue a certificate of appealability (COA). (Memo. Op. & Order, R. 129, PageID 938–39.) Bartoli twice attempted to appeal the district court's order denying the unsuccessful parts of his § 2255 petition, but the first was dismissed for lack of jurisdiction, and the second for want of prosecution.

In preparation for resentencing, both parties submitted sentencing memoranda, but the government again listed the statutory maximum penalties incorrectly, attributing five years to

securities fraud and ten years to both mail and wire fraud when it should have been ten years as to securities fraud and five years as to the latter two.

At resentencing, the district court re-imposed the same 240-month sentence. Using the original PSR (known to have the improperly inflated statutory maximums for the three counts) and the government's sentencing memorandum (also including the punishment errors), the court applied a ten-year statutory maximum to each of Bartoli's securities, wire, and mail fraud charges. Leading up to the pronouncement of his sentence, both Bartoli and Bartoli's counsel raised the error of the ten-year maximums on wire and mail fraud, noting that those maximums should be five years. Bartoli also objected to the procedural and substantive reasonableness of his sentence, the restitution award, the upward variance, and the Guidelines calculation, and the court addressed each as necessary, noting when issues should be raised on appeal.

In the face of the lower (yet still incorrect) ten-year statutory maximums for wire and mail fraud, the district court crafted the same sentence by running the 120-month terms consecutively, instead of concurrently, to again reach 240 months. As with the original sentence, this sentence reflects a substantial upward variance.

Bartoli now appeals, arguing that his new sentence also poses an ex post facto error and challenging the denial of his IAC claims.

## II. ANALYSIS

### A. Jurisdiction

The federal habeas statute authorizes district courts to "vacate, set aside or correct" a petitioner's unlawful sentence. 28 U.S.C. § 2255(a). The end result of a successful § 2255 proceeding must be vacatur of the unlawful sentence and one of the following remedies: discharge, a new trial, resentencing, or correction of the sentence. *Id.* § 2255(b). A petitioner can appeal

only "a final judgment on application for a writ of habeas corpus," *id.* § 2255(d), which brings us to the first issue: whether or to what extent we are authorized to consider the multiple issues in Bartoli's appeal.

A § 2255 resentencing "bears traits of both a § 2255 proceeding and a criminal action[.]" *United States v. Hadden*, 475 F.3d 652, 664 (4th Cir. 2007). In this way, an order finalizing a § 2255 resentencing is "a hybrid order that is both part of the petitioner's § 2255 proceeding and part of his criminal case." *United States v. Burton*, 802 F. App'x 896, 903 (6th Cir. 2020) (quoting *Hadden*, 475 F.3d at 664). To "avoid 'piecemeal appeals' in federal habeas cases," this hybrid order "serves as a basis to appeal both the legality of his new sentence as well as the district court's denial of [his other claims for relief related to his § 2255 petition.]" *Id.* (quoting *Andrews v. United States*, 373 U.S. 334, 340 (1963)). So, a district court's order that enters the result of a resentencing—like the district court's amended judgment here—completes the § 2255 proceeding and is therefore an immediately appealable "final judgment." *Andrews*, 373 U.S. at 338–40 (interpreting 28 U.S.C. § 2255(d)); *see United States v. Lawrence*, 555 F.3d 254, 258 (6th Cir. 2009) (applying *Andrews*).

While the judgment as a whole is appealable, exercise of our appellate jurisdiction varies between the two components of the hybrid order. Because there is no absolute entitlement to appeal a district court's denial of § 2255 relief, "federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners" until a COA has been issued. *Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003). As such, while Bartoli properly appealed his amended criminal judgment to challenge the denial of his other claims for § 2255 relief, he may not pursue these claims without a COA. *See Burton*, 802 F. App'x at 903 ("Although Burton may appeal from the amended judgment, he may not pursue the Rule 43 issue in his appeal until he obtains a

certificate of appealability[.]").  The district court declined to issue a COA, but we are empowered to issue one sua sponte in certain circumstances.  *See* 28 U.S.C. § 2253(c)(2).

To the contrary, a petitioner need not obtain a COA to appeal his "new criminal sentence," so we are free to hear Bartoli's challenge to the legality of his amended sentence.  *Burton*, 802 F. App'x at 903–04 (quoting *Ajan v. United States*, 731 F.3d 629, 631 (6th Cir. 2013)); 18 U.S.C. § 3742(a) (providing for appellate jurisdiction over a "final sentence" entered by the district court without a COA requirement); 28 U.S.C. § 1291 (providing for appellate jurisdiction over "final decisions" of the district court).

## B.  Certificate of Appealability

### 1.  Legal Standards

We can sua sponte issue a COA only if Bartoli "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).  Showing as much requires "a demonstration that . . . reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Slack*, 529 U.S. at 484 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)) (defining the "substantial showing" standard).

Bartoli's challenges on appeal rest on Sixth Amendment violations for IAC at various stages of his case:  first, during his plea agreement, entry of plea, and sentencing at the trial level for counsel's failure to "recognize the elements of charged offenses or the actual maximum penalties to which his client is exposed"; and second, appellate counsel's failure to raise "[t]he clear and obvious sentencing error imposing . . . sentences in excess of statutory maximums[.]" (Corrected Appellant Br. 39, 43.)  He also takes issue with the district court's handling of his IAC

claims. As the crux of our COA analysis is whether reasonable jurists could find the district court's assessment of his claims—here, the IAC claims—"debatable or wrong," we conduct a preliminary, though not definitive, review of the merits of Bartoli's IAC claims. *Slack*, 529 U.S. at 484.

A defendant's right to effective assistance of counsel attaches at the initiation of the adversarial proceedings and remains through all critical stages of the criminal proceedings, including arraignment, post-indictment plea negotiations, entry of the plea, and sentencing. *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) (attaches at initiation of adversarial judicial proceedings); *Missouri v. Frye*, 566 U.S. 134, 140 (2012) (all critical stages); *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (post-indictment plea negotiations); *Argersinger v. Hamlin*, 407 U.S. 25, 34 (1972) (guilty plea); *Benitez v. United States*, 521 F.3d 625, 630 (6th Cir. 2008) (sentencing).

We review IAC claims under the familiar two-part *Strickland* standard: Bartoli "must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense," such that "there is a reasonable probability that, but for counsel's . . . errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). We may conduct the analysis in either order, meaning we need not determine whether counsel's performance was deficient if the petitioner's allegations are insufficient to demonstrate prejudice resulting from any allegedly ineffective assistance. *Id.* at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

*Strickland*'s prejudice requirement varies slightly depending on the stage at which the petitioner asserts counsel's error(s) occurred, inasmuch as the petitioner must "allege the kind of 'prejudice' necessary" in the context of their claim. *Hill v. Lockhart*, 474 U.S. 52, 60 (1985). In the context of guilty pleas, we evaluate whether "there is a reasonable probability that, but for

counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

  2. *Analysis*

Bartoli alleges multiple errors at multiple stages, beginning at the indictment phase and continuing through sentencing, including claims relating to counsel's assistance as to the substantive elements of his offenses and relating to his possible sentence. We review them sequentially.

Neither the criminal designation form nor his indictment is a proper basis for an IAC claim in this context. While the criminal designation form contained part of the now-apparent error and counsel failed to alert the court of the error, this form is completed *after* the grand jury has returned an indictment. This form, then, would have no bearing on either the grand jury's deliberation or Bartoli's indictment, so we cannot say that this error "caus[ed] him to plead guilty rather than go to trial." *Hill*, 474 U.S. at 59. As the indictment does not include reference to the potential statutory penalties, it necessarily did not list the incorrect statutory maximum sentences for his securities, wire, and mail fraud counts. Bartoli also alleges that his counsel was ineffective in failing to correct other information in the indictment, such as prosecutorial misconduct relating to his indictment. But the indictment, which did not include the statutory penalty errors, was not erroneous, as it was "returned by a legally constituted and unbiased grand jury" and was "valid on its face." *Costello v. United States*, 350 U.S. 359, 363 (1956). Bartoli therefore fails to demonstrate how he was prejudiced by any of counsel's alleged errors as to these two documents.

Next, his challenge to counsel's knowledge of the elements of the offenses to which he pleaded guilty is barred by his plea because "[a] defendant waives his right to appeal constitutional violations occurring prior to a plea of guilty once the defendant enters his plea." *United States*

*v. Lalonde*, 509 F.3d 750, 757 (6th Cir. 2007). As Bartoli "already plead[ed] guilty" to the charges relating to the alleged errors and "as he raised no objection" to this prior to his appeal, he has waived any challenges not relating to the voluntary and intelligent nature of his plea. *Id.* Even if we were to find that Bartoli has not waived this issue, his challenge fails on the merits, as he is unable to draw a connection between the elements of securities fraud and his decision to plead guilty. *See id.* at 757–58.

The bulk of Bartoli's argument challenges counsel's effectiveness in failing to correct the statutory maximum sentences for his securities, wire, and mail fraud counts, including in his plea agreement, at the entry of his guilty plea, and at sentencing. But at baseline, Bartoli has not demonstrated that he would instead have proceeded to trial if he had known the correct, lesser statutory maximums. He argues that he should be permitted to withdraw his guilty plea due to the incorrect information in order to "ma[ke] an informed decision whether to accept the plea agreement and enter a plea or proceed to trial." (Corrected Appellant Br. 48.) But this is not "the kind of 'prejudice' necessary" in the context of his guilty plea IAC claim. *Hill*, 474 U.S. at 60. That one would reconsider his plea decision does not show "there is a reasonable probability that, but for counsel's errors, he . . . would have insisted on going to trial." *Id.* at 59.

In sum, Bartoli's generalized assertions do not convince us that he was disadvantaged by counsel's errors at any stage. He therefore fails to demonstrate either (1) a "substantial showing of the denial of a constitutional right" or (2) that the district court's assessment of his claims was "debatable or wrong." So as we decline to issue a COA, we cannot hear Bartoli's other claims related to his § 2255 petition.

## C. Ex Post Facto Violation

As noted, we can consider Bartoli's challenge to the legality of his amended sentence without a COA. *See Burton*, 802 F. App'x at 903–04. Here, the parties unequivocally agree that the district court's imposition of a ten-year sentence on the wire and mail fraud offenses violated the Ex Post Facto Clause.

Despite the same judge facing this issue once before, Bartoli's resentencing fared no better than the first as to the statutory maximum applied to the wire and mail fraud counts. At the time of Bartoli's conduct, the statutory maximums for Bartoli's wire and mail fraud counts was five years each. 18 U.S.C. §§ 1341, 1343 (1994), *both amended by* Pub. L. 107–204, Title IX, § 903(b), 116 Stat. 805 (2002). As established, the probation office and district court erroneously used the Sarbanes-Oxley Act's twenty-year statutory maximums for the securities, wire, and mail fraud counts during his first round of sentencing. The error was brought to the court's attention by both parties during post-conviction proceedings. But the district court failed to correct itself, instead using different, yet still erroneous, statutory maximums: This time, the court utilized ten-year statutory maximums for wire and mail fraud, again exceeding both counts' five-year maximum sentence.

So, for the same reason his 2016 sentence was illegal, Bartoli's newly imposed sentence continues to be illegal under the ex post facto doctrine. As such, we agree with Bartoli's unopposed assertion that "[t]he 2021 sentence imposed must be vacated because it is unconstitutional." (Corrected Appellant Br. 30.) The district court must impose a long overdue constitutional sentence, considering the statutory maximums in effect at the time of the conduct for which Bartoli was convicted: ten years for securities fraud and five years for each mail and wire fraud.

But the parties diverge on what exactly should be resentenced: only the unlawful parts of his sentence—those posing an ex post facto problem—or all of his counts—referred to as his "sentencing package." A sentencing package exists "where sentences imposed on the multiple counts are interdependent." *Pasquarille v. United States*, 130 F.3d 1220, 1222 (6th Cir. 1997). Under the sentencing package doctrine, "when a defendant is found guilty on a multicount indictment, there is a strong likelihood that . . . the sentences on the various counts form part of an overall plan, and that if some counts are vacated, the judge should be free to review the efficacy of what remains[.]" *United States v. Townsend*, 178 F.3d 558, 567 (D.C. Cir. 1999) (cleaned up).

While case law has not specifically defined "interdependent"—also described as "interrelated"—we are not bereft of guidance. *See Maxwell v. United States*, 617 F. App'x 470, 478–79 (6th Cir. 2015) (collecting cases). When offenses are "components of a single comprehensive sentencing plan," a court is authorized to "reevaluate the entire aggregate sentence." *Id.* at 478 (quoting *Pasquarille*, 130 F.3d at 1222). "The appeals court, in such instances, may vacate the entire sentence on all counts so that, on remand, the trial court can reconfigure the sentencing plan to ensure that it remains adequate to satisfy the sentencing factors[.]" *Greenlaw v. United States*, 554 U.S. 237, 253 (2008).

So, the scope of the district court's second resentencing turns on whether Bartoli's sentences are interrelated or interdependent. On one hand, Bartoli asserts that his "sentences are not part of any package because [he] is simply sentenced to what the district court erroneously conclude[d] were the statutory maximums for each count of the indictment." (Corrected Appellant Br. 29.) On the other hand, the government contends that "a defendant's multi-count sentence, like the one Bartoli received here, is a 'package' because 'the district court is likely to fashion [an overall sentence] in which sentences on individual counts are interdependent'" such that the entire

package should be "unbundled" at resentencing. (Appellee Br. 27 (quoting *United States v. Hicks*, 146 F.3d 1198, 1202 (10th Cir. 1998) (alteration in original).)

We look to the record to answer this question, analyzing the district court's consideration of Bartoli's course of conduct, history, and personal characteristics; the sentencing factors; and whether the offenses at issue were discussed individually or as aggregated conduct or sentences. *See Maxwell*, 617 F. App'x at 479–80; *United States v. Mainville*, 9 F. App'x 431, 436–37 (6th Cir. 2001) (per curiam); *see also United States v. Ehle*, 640 F.3d 689, 698–99 (6th Cir. 2011) (remanding for vacatur on one count and resentencing on the other count).

The language throughout the resentencing suggests that the court was considering Bartoli's sentences as an interrelated whole rather than as discrete figures assigned to each count. The district court did not discuss the convictions as though they were separate courses of conduct or separate crimes. Rather, the court discussed Bartoli's continuous management of the "Ponzi scheme" and "fraud scheme," and referred to the victims and the impact on them in aggregate.

The court's handling of the calculation during the resentencing also lends support to the view that the sentences were interrelated. The district court indicated that nothing had changed about his analysis of Bartoli's sentence except the "corrected" lower statutory maximum for the counts in question. And despite acknowledging the lower maximums, the district court expressed a strong desire to maintain the same 240-month sentence via another substantial upward variance regardless of any potential change to the guidelines sentence.

Adapting to the different (yet still incorrect) statutory maximums for wire and mail fraud, the district court simply reconfigured the concurrent or consecutive nature of the sentences to reach 240 months. While it is impossible to ascertain its specific reason for doing so, the district court stacked the mail fraud's (incorrect) statutory maximum on top of the wire fraud's (also incorrect)

statutory maximum.  This is further evidence that the district court viewed the sentences as an aggregate "bundle" to reach a specific outcome, regardless of the exact bundle formulation.

Outside of the resentencing, the majority of the underlying counts—including the two at issue here—are also substantively interrelated.  The conspiracy count is the conspiracy to commit other charged offenses and is therefore directly related to the sale of illegal securities and securities, wire, and mail fraud.  The wire and mail fraud counts are based on the fraud schemes underlying the securities fraud and sale of illegal securities counts.  So not only did the court treat the offenses as interrelated while sentencing Bartoli, but the offenses capture the various aspects of conduct that make up the same schemes.

A defendant no longer has a "legitimate expectation of finality in any discrete part of an interdependent sentence after a partially successful appeal or collateral attack," as such a challenge "place[s] the validity of his entire sentence at issue."  *Pasquarille*, 130 F.3d at 1222–23 (quoting *United States v. Harrison*, 113 F.3d 135, 138 (8th Cir. 1997), then citing *United States v. Rodriguez*, 114 F.3d 46, 48 (5th Cir. 1997)).  As Bartoli "challenged [at least] one count of his . . . interrelated convictions," reconsideration of his sentencing package poses neither a double jeopardy nor a finality issue.  *Id.* at 1222–23.  Therefore, a general remand for resentencing is the most appropriate remedy.

**D.  Reassignment**

As resentencing is warranted, we consider Bartoli's final issue on appeal:  whether the case should be reassigned to a different district judge on remand.  *See Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 580 (6th Cir. 2013) (stating that "this [c]ourt has the power, under 28 U.S.C. § 2106, to order the reassignment of a case on remand").  The principal factors considered in determining whether reassignment is appropriate include:

> (1) whether the original judge would reasonably be expected to have substantial difficulty in putting out of his or her mind previously expressed views or findings; (2) whether reassignment is advisable to preserve the appearance of justice; and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Solomon v. United States*, 467 F.3d 928, 935 (6th Cir. 2006) (citing *Sagan v. United States*, 342 F.3d 493, 501 (6th Cir. 2003)). Reassignment is an "extraordinary power." *Id.* (quoting *Sagan*, 342 F.3d at 501).

We agree with Bartoli that the ex post facto errors resulted from "easily discoverable statutory maximum sentences," and appreciate his frustration. But if we reassigned the case every time a district judge misstated a statutory maximum, "reassignment would surely cease to be 'an extraordinary power . . . rarely invoked.'" *Sagan*, 342 F.3d at 501–02 (alteration in original) (quoting *Armco, Inc. v. United Steelworkers of America, AFL-CIO, Local 169*, 280 F.3d 669, 683 (6th Cir. 2002)). It is true that the district court committed the same error twice, but this is not an "appropriate limiting principle" that "would justify reassignment here but not in most other cases" where we remand for resentencing for ex post facto violations. *Sagan*, 342 F.3d at 502.

Bartoli takes issue with the district judge's "multiple comments about Bartoli" and alleged "substantial difficult[y] putting his previously expressed views or findings out of mind." (Corrected Appellant Br. 54.) While "judicial remarks . . . that are critical or disapproving of, or even hostile to . . . the parties, or their cases, ordinarily do not support a bias or partiality challenge[,] . . . they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994) (emphasis removed).

We cannot say this is the case here. The district judge's "comments about Bartoli" include analysis of appropriate sentencing factors under 18 U.S.C. § 3553(a), such as the length of time

over which Bartoli's conduct occurred, number of impacted individuals, and aggregate amount of monetary harm. The statutory maximum correction is separate and distinct from the factual context, both of which are appropriate considerations in fashioning a lawful sentence. Asking another judge to "familiarize himself with the case in preparation for resentencing," known well by the presiding judge, is unnecessary. *United States v. Robinson*, 778 F.3d 515, 525 (6th Cir. 2015). So, while the collective failure of the district court, the probation office, and the government to recognize defense counsel's clarification of the appropriate statutory maximum on two or three of Bartoli's counts is disappointing, it does not justify the "extraordinary" remedy of reassignment.

## III. CONCLUSION

For the foregoing reasons, we vacate and remand for resentencing, but we decline to consider the substance of Bartoli's other § 2255 claims or reassign the case to a different district judge.